ALEXANDER M. WHITE, Respondent, *v.* NASSAU TRUST COM-
PANY, as Executor of WILLIAM M. TEBO, Deceased,
Appellant.

1. WHARVES — RIGHT OF RIPARIAN OWNER TO MAINTAIN PIER.   The
right of a riparian owner to maintain a pier extending into the waters of
New York bay is not affected by the authority conferred by chapter 702
of the Laws of 1873, and chapter 491 of the Laws of 1884, upon owners of
real estate in that locality to fill in lands under water to exterior bulkhead
and pier lines.

2. GRANT FROM STATE — FORFEITURE.   The question of the forfeiture
of a grant from the state to a riparian owner of lands under water adja-
cent to a pier maintained by him because of failure to fill in the land
under water is a question which the state alone can raise in a proper
action.

3. RIGHT OF PIER OWNER TO DREDGE ADJOINING LAND.   Not only
has the lawful owner of a pier extending into the waters of New York
bay the general right to dredge the adjoining slip to the extent necessary
to make it commercially useful, but the duty properly to dredge such slip
was, by section 4, chapter 254, Laws of 1860, imposed upon him as a pier
owner.

4. LATERAL SUPPORT — LANDS UNDER WATER.   Even if the common-
law rule of lateral support is applicable to lands under the waters of the
sea, the rule regards only the land itself, and gives no right to such sup-
port for a pier erected upon it.

5. DAMAGES TO PIER FROM DREDGING SLIP.   The owner of a pier
extending into the waters of New York bay, who under a grant from the
state is the owner of land under water adjacent thereto, does not, by
dredging such land for the purpose of constructing a dry dock, become

liable to the owner of a neighboring pier for the damage caused to such pier by the consequent shifting of the loose soil or mud upon which it was rested.

*White* v. *Tebo,* 43 App. Div. 418, reversed.

(Argued May 8, 1901; decided October 1, 1901.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered October 9, 1899, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

This action was brought to recover damages for injuries to plaintiff's wharf, alleged to have been caused by the wrongful and unlawful acts of the defendant's testator in dredging beneath the waters adjacent to said wharf. The plaintiff is the owner of lands fronting on New York bay, in the borough of Brooklyn, at the intersection of the southerly line of Twenty-fourth street with the waters of the bay. He is also the owner of a pier extending from high-water mark, at Twenty-fourth street, into the bay for a distance of over fifteen hundred feet. This pier is constructed of timber cribs sunken in the mud and filled with stones and earth. Defendant's testator was also the owner of lands fronting on said bay, between Twenty-third and Twenty-fourth streets, upon a portion of which there was a pier similar to that of the plaintiff and extending into the bay about the same distance. These two piers were separated by a slip, or channel, one hundred and twenty-three feet in width. By a grant from the state, defendant's testator became the owner of ninety-three feet in width of the land adjacent to this pier in this channel; which left a strip of thirty feet in width next to plaintiff's pier. The southerly line of the lands owned by the defendant's testator was the center line of Twenty-fourth street extended. The plaintiff's northerly boundary was the southerly line of Twenty-fourth street extended. The strip of land thirty feet in width between said two lines remained in the ownership of the state. The natural depth of the water in the slip between the two piers varied from three to ten feet. In 1888 the

defendant's testator dredged the part of the slip owned by him to a depth of about thirteen feet, without causing any injury to plaintiff's pier. In 1893, for the purpose of constructing a dry dock, he dredged his portion of the slip, for a distance of several hundred feet from high-water mark, to a depth of twenty-six feet. During a part of the time while the work was in progress, the dredge used in excavating was so placed that the lateral sweep of the "scoop" removed a considerable portion of the mud of the bed of the land owned by the state. As a result of this part of the dredging, the soil between the excavation and the plaintiff's pier fell, or slid, into the hole which had been made and this caused a part of the latter's pier to sink away for some distance of its length.

These facts were, in substance, found by the trial court and are not in dispute. The plaintiff recovered a judgment for the cost of restoration of his pier and that judgment has been unanimously affirmed by the Appellate Division, in the second department.

*William N. Dykman* for appellant. At common law the riparian owner, without any grant of lands under water, could project from his upland a pier for the purposes of commerce. (*Buffalo* v. *D., L. & W. R. Co.*, 39 N. Y. Supp. 4; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79; *Sage* v. *Mayor*, etc., 154 N. Y. 61.) The right to dredge alongside a wharf projected from the upland is necessary to the full enjoyment of the right to build the wharf. (L. 1860, ch. 254, § 4; L. 1873, ch. 702; L. 1884, ch. 491.) The defendant's testator was not a wrongdoer. (*Johnson* v. *Oppenheim*, 55 N. Y. 280.) The judgment should not be affirmed because of defendant's failure to prop up the plaintiff's pier. (*Panton* v. *Holland*, 17 Johns. 92; *Lasala* v. *Holbrook*, 4 Paige, 169; Washburn on Easements, § 444; *Carpenter* v. *Taylor*, 164 N. Y. 171; *Russell* v. *Briggs*, 165 N. Y. 500.) The plaintiff had no right to have the structure he had erected on the confines of his land receive lateral support from the adjoining lands

under water, parcel of the bed of the sea. (*Hendricks* v. *S. V. M., etc., Co.*, 58 Cal. 190.) The upland rule as to lateral support forbids this recovery. (*Smith* v. *Thackerah*, L. R. [1 C. P.] 564; *Gilmore* v. *Driscoll*, 122 Mass. 199; *Stroyan* v. *Knowles*, 6 H. & N. 454; *Brown* v. *Robbins*, 4 H. & N. 186; *Thurston* v. *Hancock*, 12 Mass. 223; *Panton* v. *Holland*, 17 Johns. 92; *Lasala* v. *Holbrook*, 4 Paige, 169; *Hay* v. *Cohoes Co.*, 2 N. Y. 159; *McGuire* v. *Grant*, 1 Dutch. 356; *Ricart* v. *Scott*, 7 Watts, 460.)

*Percy S. Dudley* for respondent. The decisive point on this appeal is that defendant's testator dug beyond the boundaries of his own premises. This fact was alleged and proved; it was found by the trial justice, and the finding was unanimously approved by the Appellate Division, and is, therefore, not open to question in this court. (*Harroun* v. *B. El. L. Co.*, 152 N. Y. 212; *C. Ice Co.* v. *Mayor, etc.*, 166 N. Y. 97.) The attempt to justify the digging, partly because of a supposed condition in the grant and partly under a law regulating the care of wharves and adjoining slips, to be effective should have been pleaded. (*Clifford* v. *Dam*, 81 N. Y. 52.) The privilege of the owner of land to excavate upon it, even though in doing so he may injure his neighbor's building upon adjoining land, is based upon the right of a man to do what he wishes with his own property, though even this right is limited and not absolute. Beyond the limits of the land owned by him the right to excavate does not exist. (*Booth* v. *R., W. & O. T. R. R. Co.*, 140 N. Y. 275; *Ferrand* v. *Marshall*, 19 Barb. 380; 21 Barb, 409; *Radcliff* v. *Mayor, etc.*, 4 N. Y. 195; *Benner* v. *A. D. Co.*, 134 N. Y. 156; *Hay* v. *Cohoes Co.*, 2 N. Y. 159; *Mairs* v. *Manh. R. E. Assn.*, 89 N. Y. 498; *St. Peter* v. *Denison*, 58 N. Y. 416; *Jutte* v. *Hughes*, 67 N. Y. 267; *Sullivan* v. *Dunham*, 161 N. Y. 290; *Smith* v. *Thackerah*, L. R. [1 C. P.] 564.) Defendant's testator disturbed the natural boundary of the sea, admitted it upon his land, allowed it to escape from his land and to enter upon adjacent land, and subjected the plaintiff's land to the

action of the sea and its tides; he was liable for damage caused thereby, upon a principle analogous to that applied in cases of interference with running water. (*Pixley* v. *Clark*, 35 N. Y. 520; *Tebo* v. *City of Brooklyn*, 134 N. Y. 341; *Hartshorn* v. *Chaddock*, 135 N. Y. 116; *Covert* v. *Cranford*, 141 N. Y. 521; *Mears* v. *Dole*, 135 Mass. 508.)

GRAY, J.  I think this judgment should not stand.  The question in the case is whether Tebo, the defendant's testator, in dredging out the slip by his pier, could become liable to the plaintiff for any damage occasioned to the latter's neighboring pier, by reason of the soil, upon which it stood, subsiding, or falling away, into the excavation made by the dredging. There is no finding that the dredging was negligently performed; although it is found that the dredge, in its operation, excavated a portion of the state land intervening between Tebo's slip and the plaintiff's pier.  Negligence will not be presumed and our assumption must be that the excavation beyond Tebo's boundary line was accidental, or without any intention to prejudice the plaintiff in any of his rights.  The theory, upon which the plaintiff's right to recover has been upheld, is that the plaintiff had an easement of lateral support in the adjacent land and that it was the defendant's duty to protect the plaintiff's pier by preserving to it what lateral support there had been.  I entertain the gravest doubt that the common-law rule thus invoked has its proper application to the case of land under the waters of the sea.  The differing circumstances and the interests of the state incline me to the view that it should not be applied.  But if we should assume that it might apply, still, in my opinion, the plaintiff made out no right to recover damages.  Tebo's wrongdoing, if any there was, consisted in the fact that he excavated the sea bottom by his dredge to a depth which, by force of natural laws, drew into it the soft and plastic mud upon the adjacent and intervening land of the state, with the consequence that the plaintiff's pier, losing some of its previous support, yielded and sank.

Tebo, as riparian owner, had the common-law right, as against all but the state, to have his access to the navigable part of the waters in front of his upland and, by grant from the state, the lands under water, between high and low-water mark, became his for their appropriation to the purposes of commerce, by the erection of a dock, or docks, thereon. He constructed a pier out from high-water mark and a slip, by which it could be availed of for commercial uses. By the legislation of 1873 and 1884, (Chaps. 702 and 491), the owners of real estate in that locality, fronting on the water, were authorized to fill in the lands under water to exterior bulkhead and pier lines. That, however, did not affect the right of Tebo to maintain the pier. It was a permission from the state and not a command. He was under no obligation to destroy the pier property. There is no question here upon his grant, or of his compliance with its conditions. If the grant to Tebo is to be construed as requiring the grantee to fill in the lands under water and a failure to do so has entailed a forfeiture of the grant, that is a question which the state alone can raise, in a proper action. Having then an apparent right to maintain his pier, it would seem to follow that he had a clear right to dredge out the slip alongside the pier, to any proper depth to make it commercially useful, and of the purposes of commerce the maintenance of a dry dock is certainly no inconsiderable one. A slip with water of sufficient depth to float vessels was a necessary incident to the pier. Not only had Tebo the general right to dredge his slip, to the extent necessary to make it commercially useful; but the duty rested upon him by statute, as a pier owner, to properly dredge the adjoining slip. (L. 1860, ch. 254, sec. 4.) If it is an admissible legal proposition that he owed a duty to the plaintiff to protect him in the enjoyment of an easement of lateral support to his pier in the adjacent land, it was, at most, one which regarded the land itself and not the structure upon it. Tebo had a right to excavate upon his lands and the limitation upon that right, if we are to apply the common-law rule referred to, was that it

should be without injury to the adjacent land in its natural state. If that land had been burdened by the owner with some improvement, that fact gave to him no right to claim any greater easement of lateral support. This rule should be regarded as settled by the decisions of the courts of this state. (*Lasala* v. *Holbrook*, 4 Paige, 169 ; *Farrand* v. *Marshall*, 19 Barb. 380 ; and aff'd. 21 ib. 409 ; *Dorrity* v. *Rapp*, 72 N. Y. 307 ; *Booth* v. *R.*, *W. & O. T. R. R. Co.*, 140 ib. 267. And see Washburn on Easements, 4th ed., pp. 585, 586.) The courts in Massachusetts, at an earlier day, had declared this rule in *Thurston* v. *Hancock*, (12 Mass. 223), and in *Gilmore* v. *Driscoll*, (122 Mass. 199), it was mentioned as a rule which had the weight of American authority ; a number of cases being cited.

The situation, here, was that all these lands under water, in question, being part of the bed of the bay of New York, consisted of mud ; which, having no consistency, would subside or fall away, with any change effected in the level of the adjacent sea bottom, and to that result the weight of the pier would, naturally, contribute. There is no finding that the pier did not increase the lateral pressure upon the adjacent land and, therefore, the natural presumption may be indulged, under the circumstances, that it did. It is plain that no appreciable damage could have been done to the plaintiff's land. In its natural state, it was soft mud Its withdrawal or subsidence, would, ordinarily, be of advantage in the deepening of the water. Its subsidence, in the nature of things, must have happened and it is only by considering the effect upon the superstructure of the pier, that we get at the damage to the plaintiff. But, within the rule of law, as it has been declared in England and in this state, that could not give rise to a cause of action. (*Smith* v. *Thackerah*, L. R. [1 C. P.,] 564 ; *Lasula* v. *Holbrook*, *supra ;* *Booth* v. *R.*, *W. & O. T. R. R. Co.*, *supra*.)

As it was observed by Judge A_NDREWS_ in the *Booth* case, in speaking of the rule as applying only to lands in their natural condition and as not extending so as to give to the

owner of a building the right to a lateral support, there was, in this case, "damage but no wrong, because what was done by the adjacent owner was in the lawful and permitted use of his property." In dredging out his slip, Tebo was in the lawful exercise of his property rights and as that which resulted to the plaintiff's lands was not a damage of any appreciable nature, he cannot be rendered liable because the plaintiff's pier sank with the subsidence of its plastic bed. This is the result which I reach upon the theory that the common-law rule of lateral support is applicable. But, as I have suggested, it cannot, reasonably, be applicable to such conditions. Applied to the land, as it is usually owned, it can be seen to have its reasonable operation upon the relative obligations of adjacent landowners; but I am quite unable to see how it had any relevancy to the case of lands under water, where the tide ebbs and flows; whose ownership is in the state, in trust for the benefit of the people, and which are granted by the state for the advancement of its commerce.

Then, in my opinion, there is a further view to be taken of this question from the standpoint of the state. While the grant was obtained by Tebo for his private advantage, nevertheless, it was made by the state, primarily, in pursuance of a policy to benefit the municipality by the improvement of its harbor and, therefore, to advantage, to that extent, the commonwealth. (*Langdon* v. *Mayor, etc., of N. Y.*, 93 N. Y. 129.) It contemplated a development of the subject of the grant by the grantee, in a direction that would promote the purposes of commerce. As I have before observed, the question is not here as to whether Tebo has complied with the conditions of the grant. If he has not, that is for the state to assert. If it shall be held in this case that the owner of lands lying under the waters of the sea cannot deepen, or improve, them for commercial purposes, without incurring a possible liability to an adjacent owner by reason of the effect upon his structures of the shifting of the loose soil or mud, upon which they were insufficiently rested; or if he is legally bound to anticipate such a result and to make exertions to protect all such

adjacent structures, the precedent must militate against the free and effective operation of the policy of the state, as it would tend to impose a more or less onerous burden upon the riparian proprietor in the exercise of his right to develop his water properties. The deepening by Tebo of his slip was to make it available to vessels entering from the public highway of the sea. As long as he elected not to avail himself of the permission to fill in his lands under water, they remained a part of the bay of New York and that was, too, the case with those intervening between his property and the plaintiff's and which still remained in the ownership of the state. It was Tebo's right and it was the interest of the state that he should make use of his water properties for purposes of commerce, and no restrictions upon that right should be countenanced by the courts, which interfere with its lawful exercise; unless they can be seen to be based upon some rule of property of clear and obvious application in such cases.

For these reasons, I think the judgment should be reversed and a new trial ordered, costs to abide event.

PARKER, Ch. J., BARTLETT, MARTIN and VANN, JJ., concur; HAIGHT and WERNER, JJ., dissent.

Judgment reversed, etc.