## TIMOTHY REGAN *vs.* WILLIAM H. KEYES.

Suffolk.    December 2, 1909. — January 7, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Practice, Civil,* Exceptions, New trial.    *Contract,* Construction, Performance and breach.    *Lateral Support.    Practice, Civil,* Amendment.    *Limitations, Statute of.*

In an action against a contractor, who had made a general contract with a landowner for the erection of a building at the corner of two streets in that part of Boston called East Boston, brought by one who had agreed to do all the work of excavation called for by the defendant's contract with the landowner, it appeared that, after certain work had been done by the plaintiff, the plaintiff and the defendant had agreed that the plaintiff should stop work and that the defendant should complete the excavation at the plaintiff's expense.    It appeared also that there was in one of the streets adjoining the land to be excavated a compressing

air plant used in the construction of the tunnel under the harbor to East Boston. The defendant was notified by his engineer and by the engineer in charge of the construction of the tunnel that a bulkhead must be built at once and requested the plaintiff to build one. The plaintiff refused to do this, and the defendant caused the bulkhead to be built at a cost of $467. The defendant asked the presiding judge for a ruling " that the defendant should be allowed the cost of building the bulkhead . . . if the same was necessary to 'protect the street or sidewalk and prevent them from falling in, or if the same was necessary to protect the water mains or sewers or tunnel or compressed air plant in the street, or if the same was necessary in order to comply with the provisions contained in the specifications accompanying the contract between the defendant" and the landowner. The judge refused to make this ruling. He submitted to the jury the special question " What expense, if any, for the bulkhead does the jury include in their verdict ? " The response was " The jury answers $467." The jury returned a verdict for the plaintiff " in the sum of $623.80, with interest," from a certain date. The case had been referred to an auditor, and the amount allowed to the plaintiff by him, after deducting certain items in dispute which he disallowed, was $721.77. The amount claimed by the plaintiff without deducting those items was $1,344.88. The plaintiff contended that the only way in which the expense of the bulkhead could be included in the verdict was by deducting that expense from the sum otherwise found by the jury to be due to the plaintiff, that the answer of the jury to the special question must be taken to mean that they deducted $467 on this account from the sum otherwise found by them to be due to the plaintiff, and that therefore the refusal of the judge to make the ruling requested by the defendant about allowing him the cost of building the bulkhead was immaterial. *Held,* that although the contention of the plaintiff seemed to be in accordance with the strict interpretation of the answer to the special question, yet that question as addressed to the jury under the circumstances was a somewhat blind one, and this court were unwilling to decide that the jury in finding a verdict for the plaintiff in the sum of $623.80 deducted from the sum otherwise found to be due to the plaintiff $467 for the expense of the bulkhead, and thus to say that the defendant could not have been harmed by the refusal of the ruling which he requested.

In an action against a contractor, who had made a general contract with a landowner for the erection of a building at the corner of two streets in that part of Boston called East Boston, brought by one who had agreed to do all the work of excavation called for by the defendant's contract with the landowner, it appeared or was assumed, that at the date of the contract between the defendant and the landowner there was in one of the streets adjoining the land to be excavated a compressing air plant consisting of buildings and machinery of great weight used in the construction of the tunnel under the harbor to East Boston, that there were under the same street a large water main, a large trunk line sewer and gas mains, and that the presence of the air plant was known to the defendant and landowner when they made their contract, even if the presence under the street of the water main, the trunk line sewer and the gas mains was not known to them at that time. It did not appear whether the excavation was more than ten feet below the grade of the street and thus came within the provisions of St. 1892, c. 419, § 32, now St. 1907, c. 550, § 19. The specifications of the contract between the defendant and the landowner provided that each contractor should " make good any damage done to adjoining premises or sidewalks which he or his workmen may occasion," that he should " keep all sidewalks and adjoining property from caving in " and that he should " repair any

damages to adjoining work." The presiding judge told the jury that the right of lateral support which one landowner owes to another is the support of the land in its natural condition, and that it was the plaintiff's duty to take all reasonable and proper precautions to prevent injury to other people's land and to the street in front of the lot. At the close of the charge the defendant excepted to this portion of it, and asked the judge to rule "that everything in that street in the way of work, tunnel, water main, should be held up and that K. or R. [the plaintiff or the defendant] was under a liability to hold those things in place, and, if the necessity of a bulkhead was reasonable in view of what was in the street in the way of public improvements, public necessities, he was obliged to hold them up by a bulkhead if a bulkhead was necessary." The judge refused to make this ruling, and the jury returned a verdict for the plaintiff. On exceptions alleged by the defendant, it was *held*, that there was a mistrial and that the exceptions must be sustained; that, if the excavation was more than ten feet below the grade of the street, the statute put on the landowner making the excavation the burden of supporting any buildings on adjoining land, and that, if the excavation was not within the statute, the defendant's obligation in regard to the excavation under his contract with the landowner was by the terms of the contract between the plaintiff and the defendant the measure of the plaintiff's obligation to the defendant, and therefore that it was the duty of the plaintiff to prevent a cave-in of the street adjoining the excavation as the street then existed with the air compressing plant in it and the other structures under it.

In an action against a contractor, who had made a general contract with a landowner for the erection of a building at the corner of two streets in that part of Boston called East Boston, brought by one who had agreed to do all the work of excavation called for by the defendant's contract with the landowner, it appeared that, after certain work had been done by the plaintiff, the plaintiff and the defendant had agreed that the plaintiff should stop work and that the defendant should complete the excavation at the plaintiff's expense. It appeared also that there was in one of the streets adjoining the land to be excavated a compressing air plant, consisting of buildings and machinery "of great weight," used in the construction of the tunnel under the harbor to East Boston, and that there were under the same street a large water main, a large trunk line sewer and gas mains. The defendant was notified by his engineer and by the engineer in charge of the construction of the tunnel that a bulkhead must be built at once and requested the plaintiff to build one. The plaintiff refused to do this, and the defendant caused the bulkhead to be built at a certain cost. By his contract with the defendant the plaintiff had bound himself to prevent a cave-in of the street adjoining the excavation as the street then existed with the air compression plant in it and the other structures under it, and a new trial was granted to the defendant on account of an error in the instructions to the jury as to this obligation of the plaintiff. A portion of the charge of the presiding judge could have been understood to mean that, if the plaintiff was not bound to put in the bulkhead, he might recover the cost of the filling back of it which he furnished to the defendant. The plaintiff testified that it did not cost any more to deposit the excavated material as back filling than to take it away. In anticipating questions that might arise upon a new trial of the case, it was *held*, that, although as a matter of construction of the contract between the plaintiff and the defendant it was the absolute duty of the plaintiff to keep the sidewalk of the adjoining street from caving in, it did not necessarily follow that the plaintiff must pay the expense incurred by the defendant in putting in the bulkhead,

that it was necessary to determine whether the bulkhead was put in solely to protect the air machinery from being jarred, and, if it was not, but was put in solely or partly for the purpose of preventing a caving in of the sidewalk, it would be necessary to determine whether putting it in as it was put in was a reasonable method of stopping a cave-in, and, if it cost more than reasonably would have been expended merely in stopping a cave-in, the defendant could be allowed no more than the amount of the reasonable expense which would have accomplished that purpose. *Held, also,* that, if the plaintiff was not bound to put in the bulkhead, it did not follow necessarily that he was entitled to recover the cost of the filling which he supplied for it.

Under R. L. c. 173, § 48, the question whether a new count may or may not be permitted to be added to a declaration by amendment depends upon the question whether it will enable the plaintiff to sustain the action for the cause for which it originally was intended to be brought; and, when an amendment has been allowed on this ground, the count thus added stands for all purposes, including the defense of the statute of limitations, as if it had been inserted in the declaration originally.

Where an amendment to a declaration by the addition of a new count is "filed by consent," and no order of the court is made at the time, but afterwards an answer to the new count is filed by the defendant "by leave of court," the order permitting the answer to be filed is equivalent to an order allowing the amendment.

In an action against a contractor, who had made a general contract with a landowner for the erection of a building, brought by one who had agreed to do all the work of excavation called for by the defendant's contract with the landowner, where it appeared that, after the plaintiff had done a certain amount of work, the plaintiff and the defendant had agreed that the plaintiff should stop work and that the defendant should complete the excavation at the plaintiff's expense, the plaintiff included in his claim a charge for teams furnished by him to the defendant to cart off snow and ice from the part of the lot which the defendant was about to excavate which "were removed for the purpose of enabling the defendant to excavate that part." It appeared that by the contract the whole work of excavation was to be done in twenty-three days, and that the snow and ice were carted away thirty-one and thirty-two days after the agreement of the parties that the defendant was to finish the excavation at the expense of the plaintiff. The defendant contended that the charge for the teams should be deducted from the plaintiff's claim as part of the work of which the plaintiff was to bear the expense. *Held,* that it did not appear that by the terms of the agreement the plaintiff was to bear the burden of additional expense caused by the defendant having put off the work of excavation for his own convenience.

CONTRACT for a balance alleged to be due to the plaintiff from the defendant under a contract in writing dated October 14, 1901, whereby the plaintiff agreed to excavate for the defendant a lot of land situated at the corner of Lewis Street and Marginal Street in that part of Boston known as East Boston, and for extra work alleged to have been performed in connection with such excavation. Writ dated February 12, 1904.

In the Superior Court the case was referred to William Sullivan, Esquire, as auditor. He made a report in favor of the plaintiff, finding the sum of $721.77 to be due to him with interest from September 1, 1902. The case was tried before *Bell*, J. The plaintiff put in evidence the auditor's report, and oral evidence was introduced by both parties. The evidence and the course of the trial are stated and described in the opinion.

The jury returned a verdict for the plaintiff in the sum of $623.80 with interest from September 1, 1902, amounting to $238.60, making in all $862.40. The jury also answered certain questions put to them by the judge, including a question and answer which are quoted in the opinion. The defendant alleged exceptions, raising the questions which are stated in the opinion.

The case was submitted on briefs.

*J. Cavanagh*, for the defendant.

*F. H. Chase*, for the plaintiff.

LORING, J. We are of opinion that there has been a mistrial in this case.

Before October 14, 1901, the defendant in this action had made a general contract with the owner of a parcel of land on the corner of Lewis Street and Marginal Street in East Boston to erect on it a seven story warehouse in accordance with drawings and specifications by certain architects therein named.

By a contract dated October 14, 1901, the plaintiff agreed to do all the work of excavation called for by the defendant's contract with the landowner in accordance with the drawings and specifications of the architects as there set forth, which drawings and specifications were made part of the contract between the plaintiff and the defendant.

It is stated in the bill of exceptions that " on or about November 30, 1902, and while the plaintiff was still carrying on the work of excavating, several ' cave-ins ' occurred and the side of the lot fronting on Lewis Street needed supporting in order to hold the sidewalk and to prevent injury to the compressed air plant and the water and gas mains and sewer in the street." We assume that November 30, 1901, not November 30, 1902, is the date here intended. On December 20, 1901, it was agreed between the plaintiff and the defendant that the plaintiff should

stop work and that the defendant should complete the excavation at the plaintiff's expense.

It is also stated in the bill of exceptions that " at the date of the contract between the plaintiff and defendant," there were in Lewis Street: (1) a compressing air plant used in the construction of the tunnel to East Boston under the harbor; (2) a large water main which supplied East Boston with its water supply; (3) a large trunk line sewer; and (4) gas mains. It is further stated in the bill of exceptions that the compressing air plant was a large one, consisting of buildings and machinery, and " was of great weight and was liable to be seriously damaged by any ' cave-in ' in the lot which was being excavated."

The defendant's evidence tended to show " that it was impossible to carry on the work any further unless sheet piling was driven or a bulkhead was constructed immediately " ; and " that the engineer and architect in charge of the work, and also the engineers in charge of the tunnel construction, gave notice to the defendant that sheet piling should be driven or a bulkhead built at once, and threatened to secure an injunction against the prosecution of the defendant's work unless the same was attended to ; that the defendant requested the plaintiff to build the bulkhead, urging the immediate necessity therefor, and on the plaintiff's refusal so to do, the defendant caused the bulkhead to be built at a cost of $457." It appears from other parts of the bill of exceptions and from other papers before us that the cost of the bulkhead was $467, not $457.

The plaintiff testified that he understood that the bulkhead was put in " so as to prevent, so that the delicate air compressing machinery would not be jarred, that furnished the air for the tunnel under the river, and if that should be jarred a large number of men would be in danger."

At the trial the defendant asked for a ruling " that the defendant should be allowed the cost of building the bulkhead on the Lewis Street front if the same was necessary to protect the street or sidewalk and prevent them from falling in, or if the same was necessary to protect the water mains or sewers or tunnel or compressed air plant in the street, or if the same was necessary in order to comply with the provisions contained in the specifications accompanying the contract between the

defendant Keyes and the National Dock and Warehouse Company."

The presiding judge told the jury that the right of lateral support which one landowner owes to another is the support of the land in its natural condition, and that in the case at bar it was the plaintiff's duty to take all reasonable and proper precautions to prevent injury to other people's land or to the street in front of his lot.

At the close of the charge the learned counsel for the defendant took an exception to that portion of the charge which dealt with the duty of holding up the adjoining land without structures on it, and asked the judge to rule "that everything in that street in the way of work, tunnel, water main, should be held up, and that Keyes or Regan was under a liability to hold those things in place, and, if the necessity of a bulkhead was reasonable in view of what was in the street in the way of public improvements, public necessities, he was obliged to hold them up by a bulkhead if a bulkhead was necessary." This was refused and an exception was taken. An exception was also taken to the judge's refusal to give the ruling asked for.

The jury found for the plaintiff "in the sum of $623.80, with interest at six per cent from September 1, 1902, amounting to $238.60; total verdict $862.40."

There is a preliminary question which must be disposed of.

A special question was submitted to the jury, namely: "What expense, if any, for the bulkhead does the jury include in their verdict?" The record as to this is: "The jury answers: $467.$^{00}/_{100}$."

The plaintiff has contended that since the only way in which the expense of the bulkhead could be included in the verdict was by deducting the expense of it from the sum otherwise found by the jury to be due to the plaintiff, the answer to this question must be taken to mean that the jury did deduct $467 from the sum otherwise found by them to be due the plaintiff. If the cost of the bulkhead was in fact deducted from the sum otherwise due the plaintiff, the defendant cannot now complain that the charge of the presiding judge on that point was incorrect. And the plaintiff has insisted upon that point.

While it is hard to give any other meaning (than that con-

tended for by the plaintiff) to the question and answer if they are examined critically, yet the question was a somewhat blind one to a jury, and an examination of the matters in dispute has convinced us that this case ought not to be disposed of on that ground. The plaintiff's demand was for the contract price, $1,850 plus three extras, to wit: (1) Sand, amounting to $182.70 (under count 4); (2) back filling behind the bulkhead $76.63, and teams for hauling snow and ice (under count 6), amounting to $106.63; and (3) extra expense of hauling the earth excavated because he was not given the use of railroad tracks, $361.80, making a total of $2,501.13. The plaintiff allowed the defendant (1) a payment of $710, and (2) for completing the work $446.25, a total of $1,156.25, making his net claim $1,344.88. The auditor (1) allowed the defendant $38.25 more for completing the work than the plaintiff gave him credit for; (2) charged the plaintiff with $223.06 for part of the expense of erecting a derrick of which the plaintiff by agreement was to have the use in part; and (3) disallowed the $361.80 claimed by the plaintiff. These three items amounted to $623.11; deducting that from $1,344.88 claimed by the plaintiff we have the amount allowed by the auditor $721.77. These were the items in dispute. We have been unable to persuade ourselves that the jury in finding a verdict for $623.80 deducted from the sum otherwise found to be due to the plaintiff $467 for the bulkhead.

. If as matter of construction of the contract between the defendant and the owner of the land (which in terms is the measure of the plaintiff's obligation under his contract with the defendant) it was the duty of the defendant to hold up Lewis Street and prevent " cave-ins " as it then existed, the defendant's exceptions must be sustained. We are of opinion that such was the defendant's duty as matter of construction of that contract.

The statement in the bill of exceptions is that the four structures mentioned above were in Lewis Street " at the date of the contract between the plaintiff and defendant." But counsel in their arguments have assumed that they were there at the date of the contract between the defendant and the owner of the land, and we shall dispose of the case on that footing.

There are three clauses in the specifications in accordance with

which the work was to be done which bear upon this question, namely : "Each contractor shall . . . make good any damage done to adjoining premises or sidewalks which he or his workmen may occasion," "keep all sidewalks and adjoining property from caving in," and "repair any damages to adjoining work."

In determining what the true construction of these provisions is the first matter of importance to be kept in mind is that while the law as to lateral support of adjoining parcels of land was correctly laid down by the presiding judge, and while that is the underlying principle on which the correlative rights and duties of adjoining proprietors of land are based where an excavation for the erection of a building in a city is concerned, that principle of law is not practically the determining factor in that case. It is the exception that land can be excavated up to the division line to the depth required for a city building without earth running into the hole so dug from the land in its natural state. And city buildings, in substantially all instances, are built up to the division line. In other words an excavation for a city building (unless the earth consists of hard clay or of some other exceptional substance) always goes beyond the line to which the owner is confined by the law of lateral support, and the neighbor's land in the ordinary case has to be protected in some way. It is this practical view of the situation which has led to the statute (relating to Boston) requiring one who makes an excavation ten feet or more below the grade of the street to bear the expense of supporting the wall, if there be one, on the adjoining land, (St. 1892, c. 419, § 32; St. 1907, c. 550, § 19,) and to a similar statute in New York (N. Y. St. 1855, c. 6 ; *Dorrity* v. *Rapp*, 72 N. Y. 307).

The second thing to be borne in mind is that in specifications for a general contract for the erection of a building practical results are aimed at by the owner rather than protection from liability to a neighbor whose legal rights depend upon what would have taken place had the neighborhood been in its natural state.

And lastly, it is to be remembered that it was known to the defendant and the landowner (when they made their contract) that this large compressing air plant "of great weight" was in Lewis Street, in front of the lot to be excavated. Whether the

presence under Lewis Street of the water main, the large trunk line sewer and the gas mains was or was not known may admit of doubt.

Having these things in mind, how can we say that the words in the contract "keep up all sidewalks and adjoining property from caving in," do not mean what they say? How can we say that the owner of the land here in question did not insert this very provision in his contract with the defendant to avoid all question between his neighbors and himself as to lateral support? Whether the excavation here in question was or was not more than ten feet below the grade of the street does not appear. Nor is it material. If it was, the statute put the expense of the burden of supporting any building upon adjoining land on the owner of the land to be excavated, and he could not escape that burden by making a contract with an independent third person for having the excavation done. See *Dorrity* v. *Rapp*, 72 N. Y. 307. But even if it had appeared that the excavation here in question was not within the statute, how can we say that this provision was not inserted in the contract to avoid all question as to his violating the duty as to lateral support owed by him to his neighbors, which depends upon the abstract question: Would or would not the soil of the street and the soil of adjacent land in their natural condition have run into the excavation? In our opinion we cannot say that this clause was not put into the contract for the purpose of avoiding all question on that point.

It follows that the defendant's contract with the landowner put on the defendant the absolute duty of preventing a cave-in on Lewis Street, not in its natural condition but as Lewis Street then stood with the air compressing plant in it and other structures under it. It also follows that the exceptions must be sustained which were taken to the refusal to rule as requested and to this part of the charge.

As we have said, the measure of the defendant's obligation in respect to the excavation under his contract with the landowner is by the terms of the contract between the plaintiff and defendant the measure of the plaintiff's obligation to the defendant and therefore it was the absolute duty of the plaintiff under his contract with the defendant to prevent a cave-in on Lewis

Street as it then stood, with the air compressing plant in it and the other structures under it.

The case must go back for a new trial, and we will dispose of the questions argued here which are likely to arise there.

Although as matter of construction of the contract between the plaintiff and the defendant it was the absolute duty of the plaintiff to keep the sidewalk on Lewis Street from caving in, it does not necessarily follow that the plaintiff must pay the expense the defendant was at in putting in the bulkhead. Two questions still remain: (1) Was the bulkhead put in solely to protect the air compressing machinery from being jarred? (2) If it was put in for the sole purpose or partly for the purpose of preventing a cave-in on the Lewis Street sidewalk, was the putting of it in as it was put in a reasonable method of stopping a cave-in? If it cost more than would have been reasonably expended in stopping a cave-in, the defendant can be allowed no more than the amount of the reasonable expense of doing that.

It follows that the question of the plaintiff's right to recover the cost of the back filling may come up again. The charge of the presiding judge may have been understood to mean that if it did not belong to the plaintiff to put in the bulkhead, the plaintiff could recover the cost of the back filling of it. That does not necessarily follow. It appears that this back filling was done by depositing material excavated by the plaintiff under his contract. The plaintiff testified that it did not cost any more to deposit the excavated material as back filling of the bulkhead than to take it away.

The original declaration contained five counts. Among the papers sent up with this bill of exceptions is a motion to amend the declaration by inserting a sixth. This is indorsed " Filed by consent June 26, 1908." An answer to this count which includes the statute of limitations is indorsed: " Filed by leave of court January 15, 1909."

The defense of the statute of limitations to an amended count of a declaration does not stand in this Commonwealth on the same ground that it stands on in some other States. For that reason the cases cited by the defendant are not decisive of the question whether the claim set forth in the sixth count is barred by the statute.

Under our statutes the question whether a new count shall or shall not be added by amendment depends upon the question whether it is made to enable the plaintiff to sustain the action for the cause for which it originally was intended to be brought. R. L. c. 173, § 48. *Driscoll* v. *Holt*, 170 Mass. 262, and cases cited.

The question whether the new count is added to enable the plaintiff to sustain the action for the cause for which it was originally intended to be brought is a question to be decided when the motion for the allowance of the proposed amendment comes on for hearing. If the judge who hears that motion is of opinion that the new count is added to enable the plaintiff to sustain the action for the cause for which it was originally intended to be brought he may allow the amendment; and on the amendment being allowed on that ground the action stands for all purposes including the defense of the statute of limitations as if the amendment had been originally inserted in the declaration. See *McLaughlin* v. *West End Street Railway*, 186 Mass. 150. If the judge who hears the motion to amend is of opinion that the new count is not added for that purpose the motion to amend is denied.

The difficulty in the case at bar is that the motion to amend the declaration was not passed upon by the judge. It is indorsed " Filed by consent." It is not altogether clear that this is tantamount to a consent that the motion may be allowed. We assume that a consent to the allowance of the motion to amend is equivalent to an order of court allowing the amendment, and would have the same effect. But however that may be, the answer to the new count was filed " by leave of court," and that is equivalent to an order allowing the amendment. For unless the new count was filed by leave of court, or what was tantamount to that, there was no occasion to file an answer to it. The defense of the statute of limitations set up in the answer to this count is a defense to this count which stands as if this count had been inserted in the declaration in the first instance.

The defendant has argued that he must of necessity have a right to deduct from the plaintiff's claim the charge for teams furnished by the plaintiff to the defendant, to cart off snow and

ice from the part of the lot which the defendant was about to excavate, and which " were removed for the purpose of enabling the defendant to excavate that part." These teams appear to have been furnished on January 23 and 24, 1902, more than a month after it was agreed that the defendant was to finish the work of excavation at the expense of the plaintiff. It is enough to dispose of this contention to say that on the terms of this agreement as stated in the bill of exceptions it is not clear that the plaintiff was to bear the burden of added expense caused by the defendant having put off the work of excavation for his own convenience. This snow and ice were carried away on the thirty-first and thirty-second days after that agreement was made; and the time originally mentioned in the contract within which the whole work of excavation was to be done was twenty-three days. The entry must be

*Exceptions sustained.*