HICKMAN, Respondent, vs. WELLAUER and others, Appellants.

*March 4—April 2, 1919.*

*Adjoining lotowners: Lateral support of building: Municipal ordinances: Assumption of obligation to support: Injury to building: Damages.*

1. A lotowner has an absolute right, so far as his land is in its natural condition, to lateral support from the adjoining lot.
2. If a lotowner has added to the weight of the soil by the erection of a building, he must himself provide proper support and care for such additional load whenever the owner of the adjoining lot wishes to excavate thereon; but reasonable notice of the intention to excavate on such adjoining lot so near the building that danger thereto might reasonably be anticipated must be given to the owner of the building so that he may have an opportunity to protect and support it.
3. The established property rights above mentioned cannot be taken away or substantially changed except by express declaration of the legislature, either by statute or by express delegation of such a power to a city council. They were not, in this case, affected by a municipal ordinance (adopted under the general authority given by the city charter to the common council "to control and regulate the construction of buildings," etc.) providing that "no one shall excavate so as to injure any adjoining ground or building."
4. Without having given any notice, the owner of an adjoining lot began excavating near and beneath the foundation of plaintiff's building, and, assuming that under the ordinance above quoted he was bound to support the building, he began underpinning said foundation with concrete. Plaintiff obtained a temporary injunction, but a motion to vacate it was at once made. Pending such motion the work was continued and a large part of it had been completed when, some days later, the injunction was vacated and modified so as to permit the removal of earth and supports from and under the building under the direction and advice of competent and capable engineers and with the approval and consent of the building inspector of the city; a bond being required and given for payment of any judgment plaintiff might recover in the action. The method used in the undermining and underpinning of plaintiff's building was not the usual and proper one, but was adopted because of its supposed convenience and economy; and the work caused the building to list, cracking

and injuring it.   *Held,* that under the circumstances there was more than a gratuitous performance by defendant of plaintiff's obligation to support his own building, and that there had arisen an obligation on defendant's part to prosecute the work by proper methods and with reasonable skill and care and a liability for damages caused by a breach of such obligation.

5. The diminution in the value of the building was the proper measure of plaintiff's damages; and defendant was not entitled to any allowance for the expense of doing the work.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge.   *Affirmed.*

The plaintiff owned a lot twenty by ninety feet facing west on Edison avenue in the city of Milwaukee upon which was a three-story-and-basement brick building twenty by eighty-six feet, the north wall of which was just on the line between plaintiff's lot and one belonging to former defendant Jacob Wellauer.   Prior to 1890 a two-story brick barn twenty by twenty-five feet stood there on a foundation eight to ten feet high of rubble stone about twenty-two inches thick.   In 1891 it was changed into a dwelling, with fifteen-foot additions front and rear, and in 1893 a third story was added.

Wellauer proposed to erect a building on his lot, the foundations of which were to be along the division line between the two and the base of which was to be eight or nine feet lower than the base of the foundation wall on plaintiff's lot.   Wellauer let the contract for excavating to one Wussow, who placed his steam excavator upon the lot on the afternoon of September 21, 1915.   On the same afternoon the building inspector of Milwaukee, together with the defendant *Hartman,* general contractor for Wellauer, and the architect, were on the premises and examined the same with reference to what should be done with plaintiff's building. It appears that it was tacitly assumed at that time that by virtue of the ordinance hereinafter quoted the obligation was upon a person excavating as Wellauer proposed to do, to support and protect any adjoining building from damages consequent upon excavating.   The methods for so doing

were discussed, and then the defendant *Hartman* commenced on September 22d to excavate under the north foundation of plaintiff's building to a depth of eight to nine feet below the base of such foundation and in sections from four to eight feet long at a time, removing the earth in such sections from plaintiff's lot and then building up in such sections with stone and cement mixture to the bottom of plaintiff's foundation wall and for the entire width thereof, and after each such section had been completed making another section, and so on until the entire space occupied by plaintiff's foundation on the north line had been so built up. Such work or underpinning was completed about October 3d or 4th.

On September 24th plaintiff learned that such underpinning had been undertaken and on the next day commenced this action, the particulars of which and the subsequent proceedings therein are set out in the opinion. His complaint alleged the existence of the ordinance hereinafter quoted, the digging and removing of dirt from the Wellauer lot and from below and beneath the north wall of plaintiff's building, and that the stability of his building was impaired by failure to properly protect and guard the foundation wall. An amended complaint also alleged failure by defendants to give plaintiff notice of the proposed excavation so that he might properly protect said building.

During the progress of such underpinning by defendants it appeared that plaintiff's building was continually listing to the north, and on September 27th the building inspector issued an order on the architects requiring them to underpin and make safe the northeast corner of plaintiff's building forthwith in like manner as other parts of the building had been done by them so as to protect from any action which might result from the elements. Subsequent to such notice a diagonal bracing was placed at the northwest corner of plaintiff's building, starting from a point some distance north on the Wellauer lot to about the second floor of plaintiff's

building, and another brace was run from the northeast cor-
ner of the building to a building situated in the rear of the
Wellauer lot.

Upon the trial, which was by the court without a jury, the
court found substantially as follows: (1) Plaintiff's building
was plumb at the time the defendants commenced excavat-
ing; (2) that it was in a good and ordinary state of repair;
(3) that there was then a good bearing foundation in the
wall under plaintiff's building; (4) that the excavations done
by defendants prior to the underpinning caused plaintiff's
building to list; (5) that the method adopted by defendants
was inadequate and not careful; (6) that it was not such as
is generally used under such foundations; (7) that the use of
so-called needle beams or diagonal braces would have pre-
vented injury to plaintiff's building; (8) that there was a
violation by defendants of sec. 43 of the Milwaukee city
building code; (9) that the acts of the defendants caused
plaintiff's building to list to the north, cracking and injuring
it; (10) that the failure to support and straighten the north
wall of plaintiff's building caused the same to project at the
upper part some two and one-half inches over and above the
Wellauer lot; (11) that the damages to plaintiff's building
by reason of the foregoing were $3,400, and that in addition
to such compensation he was entitled to have an easement on
the Wellauer lot to the extent that the north wall then pro-
jected over to such lot so long as plaintiff's building stood.

The court further found that the top of plaintiff's building
north projects over on to the Wellauer lot two and one-half
inches at the east end and four and one-half inches at the
west end and that there were the following slants to the
floors: in the basement five inches, first floor five to seven
and one-half inches, second floor four and one-half inches to
almost eight inches, and on the third floor five to five and
three-fourths inches, and that about 105 cubic yards of dirt
had been removed from plaintiff's lot under the foundation.

During the litigation Jacob Wellauer died and the action

was revived as to his executors, who with the principal con-tractor, *Hartman,* are now defendants herein.

From judgment entered in accordance with such findings the defendants have appealed.

For the appellants there were briefs by *Hoyt & Goff* of Milwaukee, and oral argument by *Frank M. Hoyt.*

For the respondent there was a brief signed by *Herbert J. Piper* of Milwaukee, of counsel, and oral argument by *Mr. Piper.*

ESCHWEILER, J.    The appellants contend: (1) that the court erred in holding that the obligation to support the weight of the building then standing on plaintiff's lot was thrown upon the defendants by virtue of the provision of the building code of Milwaukee hereinafter quoted; (2) that the findings of fact, particularly those designated in the above statement of facts as (1) to (7) and (9) to (11) inclusive, were contrary to the clear preponderance of the evidence; (3) that the damages as found by the court had no support in the evidence or were in any event excessive; and lastly, should have been diminished by offsetting the cost to defend-ants in underpinning plaintiff's building.

As incident to plaintiff's ownership of his lot he had the absolute right, so far as his land was in its natural condition, to lateral support from defendant Wellauer's lot.   So far as plaintiff had added to the weight of the soil by the erection of his building, for such additional load plaintiff himself must provide by proper support and care whenever defend-ant wished to exercise his right to excavate on his land.   In the absence of actual knowledge by plaintiff of defendant's intended excavation so near plaintiff's building that danger thereto might reasonably be anticipated, it was incumbent on defendant to give reasonable notice of such intention, that plaintiff might have an opportunity to protect and support his building.   The above is supported by the following au-

thorities: *Laycock v. Parker,* 103 Wis. 161, 177, 79 N. W. 327; 2 Cooley, Torts (3d ed.) 1236–1238; *Transportation Co. v. Chicago,* 99 U. S. 635, 645; *Starrett v. Baudler* (Iowa) 165 N. W. 216, L. R. A. 1918B, 528; *Gilmore v. Driscoll,* 122 Mass. 199, 207; *White v. Nassau T. Co.* 168 N. Y. 149, 155, 61 N. E. 169; *Walker v. Strosnider,* 67 W. Va. 39, 67 S. E. 1087, 21 Am. & Eng. Ann. Cas. 1 and note; *Gerst v. St. Louis,* 185 Mo. 191, 84 S. W. 34.

Plaintiff contends for the view, which was apparently acquiesced in by all concerned at the time the excavations in question here were being made, viz. that the obligation to support the weight of plaintiff's building was shifted to defendants.    This contention is based upon the theory that inasmuch as by sec. 3, ch. IV, of the charter of the city of Milwaukee the common council is vested with full power and authority to make ordinances and regulations for the government and good order of the city and shall have authority to so provide—"anything in a general law of this state to the contrary notwithstanding—by ordinances, resolutions, by-laws, rules or regulations;" and that in the same chapter among the specific subject matters so to be regulated appears the following: Sub. 62. "To control and regulate the construction of buildings, chimneys and stacks, and to prevent and prohibit the erection or maintenance of any insecure or unsafe buildings, stack, wall or chimney, in said city, and to declare them to be nuisances, and to provide for their summary abatement;" and that in 1914 there had been adopted by the common council of Milwaukee a building code (Milwaukee Code, 1914) for the city containing, among other provisions, as follows: "Section 43. Any person, firm or corporation making excavations or causing the same to be made shall properly guard them and shall so protect them that the adjoining soil shall not cave in, and no one shall excavate so as to injure any adjoining ground or building," there was by the clause "and no one shall excavate so as

to injure any adjoining . . . building," a change made in what would otherwise be the respective rights and liabilities of the parties under the established doctrines above stated.

Such conclusion, however, is unwarranted. Such well-established property rights as are here involved between owners of adjacent lands cannot be taken away or substantially changed except by express declaration of the legislature, either by statute or by expressly delegating such a power to the common council. *Carpenter v. Reliance R. Co.* 103 Mo. App. 480, 77 S. W. 1004. Neither of such is found in this case.

There are well-recognized limitations upon the powers of common councils in the making of valid ordinances and regulations. They must not be inconsistent with the general laws of the state. *Baraboo v. Dwyer,* 166 Wis. 372, 377, 165 N. W. 297, attempting to fix a speed limit less than that fixed by statute; *Morgenroth v. Milwaukee,* 125 Wis. 663, 668, 105 N. W. 47, affecting procedure for violation of city ordinances. Such ordinances must be in harmony with the common law as well as the public policy of the state; *Barling v. West,* 29 Wis. 307, 315, an attempt to prohibit at a temporary stand upon a person's own property the sale of lemonade without having a license; *Mills v. Sweeney,* 219 N. Y. 213, 114 N. E. 65, providing for a referendum on questions of public policy; *State v. Darnell,* 166 N. C. 300, 302, 81 S. E. 338, attempt to prohibit the ownership of land by white or colored people except the majority in such district are white or colored; *Marengo v. Rowland,* 263 Ill. 531, 533, 105 N. E. 285, ordinance singling out and prohibiting the keeping open of barber shops on Sundays. The effect of a statutory regulation in such regard when made is shown in such cases as *Regan v. Keyes,* 204 Mass. 294, 90 N. E. 847; *Ketcham v. Newman,* 141 N. Y. 205, 36 N. E. 197. The rights of the parties, therefore, must be determined without regard to this ordinance.

No notice was given to plaintiff by defendants of their in-

tention to excavate close to and below the plaintiff's wall upon the Wellauer lot.    Plaintiff had actual knowledge thereof from seeing them at work on September 24th.    At this time they had already excavated under plaintiff's foundation and removed some of the dirt and filled up at least one of the sections of about five feet in length with the stone and concrete underpinning.    They had commenced this work upon plaintiff's premises on the 22d or 23d, and on the 24th, from failure to give notice to plaintiff, had already become liable for any resultant damage to plaintiff's building that might then have been occasioned.

On the 25th the plaintiff, upon his summons and complaint herein, obtained an order, duly served, which required the defendants and all acting under them to "desist and refrain from removing any of the earth and support from, around, under, and beneath the building of said plaintiff."

The defendants, as appeared from the affidavit of Mr. Wellauer on the motion immediately made by them to vacate such injunction, declared that the effect of such injunction was to seriously delay and impede the prosecution of the work on the Wellauer lot and that the excavating contractor threatened to withdraw from the premises if he could not be allowed to proceed.    Upon the hearing of such motion testimony was given by the building inspector and the defendant *Hartman* on behalf of defendants, but not made a part of the record herein, and thereupon the injunction was vacated and set aside upon condition of the giving of a bond.    The bond, executed and approved by the court on the same day, contained the following recitals:

"Whereas, the plaintiff herein has obtained an injunction enjoining and restraining the defendant, his servants, agents, and employees, from removing any of the earth and supports from and under the building situated and located on the property of the said plaintiff as aforesaid; and

"Whereas, the defendant herein has obtained an order modifying and vacating said injunction, so as to permit the defendant, under the direction and advice of competent and

capable engineers and with the approval and consent of the building inspector of the city of Milwaukee, Wisconsin, to make such excavations and remove such earth and supports from and under the building located on the property of the plaintiff as aforesaid:

"Now, therefore, we, Jacob Wellauer as principal, and . . . do hereby undertake that the defendant Jacob Wellauer will pay to the plaintiff any judgment not exceeding the sum of twenty thousand dollars which he may recover against the defendant in this action."

As appears from defendants' testimony the work of undermining and underpinning plaintiff's building and removing the soil from his premises was continuous from the time of starting, September 23d, until October 2d, and during the period while the proceedings were pending on the motion to dissolve the injunction, and that at least two thirds of such work was finished by September 30th, the time when the order dissolving the injunction was made and the bond given.

The defendants were very desirous of avoiding any delay in the work and consequent expense incident to any such delay, the excavator threatening to leave the work if he were to be longer interrupted.

The court found upon sufficient evidence that the proper and usual method to have been used to prevent injury to the building was substantially that of running of iron beams or wooden timbers through the walls at intervals and supporting them on jack-screws resting on suitable framework on the Wellauer lot and within plaintiff's basement and the use of diagonal braces running from the Wellauer lot to the side of plaintiff's building. Such a method would more or less have inconvenienced and delayed the progress of excavating on the Wellauer lot and would, under defendants' testimony, have been far more expensive than the method used by them.

Upon the facts disclosed in this case, the liability already incurred from excavating on plaintiff's premises before giving notice, the carrying on of the work during the pendency of the injunction, the position defendants assumed by their

application to vacate it, the giving of the bond with the recitals above given, the prosecution of the work in their own way and by their own methods and supposed greater convenience and economy, made their further carrying on the work already undertaken of undermining and supporting plaintiff's building more than a mere gratuitous performance by them of the obligation resting under the law upon plaintiff to support his own building, and created such a relationship between the two that there arose an obligation on defendants' part that the work should be prosecuted by reasonable and proper methods and with reasonable skill and care. A breach on their part of such obligation made them liable for consequent damages.

We cannot set aside any of the findings of the court for want of evidence.

On such findings as to the method used and that it was an improper one, there is substantial support from what appears in the record as to the advantages of the other method suggested, also as to the possible insufficiency of time that was allowed for the hardening of the concrete mixture used in the underpinning, and the further fact, as shown by the testimony of Mr. Guthrie, one of defendants' witnesses, that the eight-foot span or open space that was in some of the sections made by defendants in building up the underpinning was too great to stand the necessary strain from the weight of such a wall.

Particular criticism is made by defendants upon the finding that plaintiff's building was plumb prior to the time defendants commenced their excavating; and while there is considerable testimony which would have supported a finding to the contrary, yet we think the court was justified in his conclusion in that regard, particularly from what is disclosed by a photograph taken of plaintiff's building in 1914 in connection with a matter in which none of the parties hereto was interested.

The court was also warranted by the evidence in refusing

to find that the listing in this wall was caused by the pumping of water out from the tunnel which was being driven along on Edison avenue near this property and the suggested draining of the soil and loosening of the foundation under this building, as argued by appellants.

On the question of damages the court received evidence of the amount it would cost to repair the building and also the amount of its diminished value by reason of the damages, and adopted as the measure to be allowed the plaintiff the lesser of these two amounts, that is, the diminution in value. This was the correct rule. *Bunker v. Hudson,* 122 Wis. 43, 55, 99 N. W. 448; 13 Cyc. 152; *Hopkins v. American P. S. Co.* 194 Mass. 582, 80 N. E. 624; *McGrath v. Heman C. Co.* 183 Mo. App. 522, 526, 167 S. W. 1086; 68 L. R. A. 703, note.

There is evidence to support this finding as to the amount of damages and it must stand.

In the disposition we are making of this case we can see no reason for granting, as requested by defendants, any allowance to them for their expense in doing this work.

*By the Court.*—Judgment affirmed.

Kerwin and Rosenberry, JJ., took no part.