SCHAEFER and others, Appellants, vs. HOFFMAN and another, Respondents.

*January 12—March 5, 1929.*

234

236

For the appellants there was a brief by *Cannon & Waldron* of Milwaukee, and oral argument by *Raymond J. Cannon*.

*F. X. Boden* of Milwaukee, for the respondents.

DOERFLER, J.  When the plaintiffs excavated for the basement of their garage they removed the lateral support to which Hoffman's lot was entitled for a depth of four feet, and in place thereof substituted a concrete wall.  The defendant Hoffman's plans called for a basement extending to a depth of three feet beyond that of the plaintiffs.  The plaintiffs, in law, therefore, when they dug their excavation, were legally bound to protect the defendant Hoffman's lot in its natural condition from damage resulting from the removal of the lateral support.  On the other hand, when the defendant Hoffman excavated below the level of the plaintiffs' basement he assumed a similar obligation towards the plaintiffs' property.

Thus far we have confined ourselves solely to mutual obligations of adjoining property owners with respect to the soil in its natural condition. Where, however, the soil of an adjoining landowner, at or near the dividing line, is burdened with the weight of a structure erected thereon, such additional weight must be cared for and protected by the owner of the premises upon which the structure is erected, if his adjoining landowner proceeds to excavate and gives timely notice of his intention so to do.

It is said in the law that wherever there is a right there is a corresponding obligation, and nowhere is the truth of this saying more manifest than in the established law pertaining to the rights of adjoining lotowners. The law recognizes the private ownership and right of control of property, both real and personal. Real estate, as distinguished from personal property, is sometimes called immovable. It comprises a portion of the earth, limited in its extent by the terms of the description, and while it has definite outlines in law it extends upwards into the air and downwards into the soil to an unlimited extent. It is not a separate and distinct parcel of land, but is in its natural state held together, connected and protected by natural forces which have existed from time immemorial. From this situation sprang the doctrine of lateral support, and this doctrine is absolute, and is both mutual and reciprocal. As a corollary from the doctrine of lateral support there originated the obligation of the self-protection of one's property under certain conditions, where weight is superimposed upon the soil by artificial means; and here also the rights of individual ownership of property are met by a mutual and corresponding obligation: first, of giving notice of proposed excavations, and second, of assuming responsibility for that which exists by virtue of the landowner's own acts. These duties, not resulting from natural but from artificial conditions, are

also absolute and are mutual and reciprocal, and wherever damage results from a failure to comply with such obligations liability ensues.

Such are the simple principles of the common law which have been developed and declared by the courts in the course of the growth of the common-law system of jurisprudence. They are founded upon natural justice. They are in harmony with our system of private ownership of property and the right of a private owner to use his property upwards or downwards to the full extent of his desire, limiting him only in the sense that such use shall not be of such a nature as to unnecessarily interfere with or diminish his neighbor's rights with respect to his own property.

Three months before building operations were started on Hoffman's property he notified the plaintiff Schaefer of his intention to build. Schaefer and Hoffman, up to the time of the collapse of the garage, were friends and neighbors, and they transacted business with each other. Each was fully advised of his individual legal property rights and obligations long before the excavations on Hoffman's lot were started. About a month prior to the beginning of the excavations, legal notices were served upon the plaintiffs requiring them to protect their property rights. In compliance with the obligations imposed upon the plaintiffs pursuant to the service of such notice, Stoltz, the mason contractor, was hired to underpin the east wall of plaintiffs' garage by pillars constructed of concrete blocks with adequate footings. When a portion of the north half of the excavation had been dug, in the month of April, Stoltz followed such excavation with the erection of from two to four pillars, and while there is a dispute in the evidence as to the number of pillars actually built, it does appear from the evidence that the same were adequate to support the east wall of plaintiffs' garage up to the time when the excavations on Hoffman's lot were continued in the month of May.

While the plaintiffs had the unquestioned right to let the contract of underpinning to an agent or contractor, nevertheless, in accordance with what has been heretofore said, it was their absolute duty to see that their wall was protected, whether Stoltz performed his contract obligation or not. Both the plaintiffs and Stoltz were aware at all times of the extent of the proposed excavations. Both realized fully the necessity for ample and proper underpinning, and Schaefer particularly recognized the obligation absolutely and primarily resting upon him of the necessity of Stoltz performing his contract, because it appears indisputably in the evidence that on May 4th, 5th, and 6th he made a reasonable effort to ascertain the whereabouts of Stoltz in order that he might be procured to perform his contract duty. On the 4th of May Stoltz was not in the city but was out fishing. On the 5th of May, when Schaefer tried to reach him, he had not yet returned. On the 6th of May further inquiry with respect to the whereabouts of Stoltz was made by Schaefer, and he was informed that he was attending a funeral miles away from the city of Milwaukee. So that it was quite conclusively established that with the numerous efforts made by Schaefer to bring home to Stoltz the necessity of the performance of his contract obligation, such efforts were of no avail on account of the conceded negligence of Stoltz. Under such circumstances it cannot be plausibly or logically said that Hoffman or his codefendant Brezinski were under obligations to delay the building project until Stoltz saw fit to return to the city. The garage collapsed at 11 o'clock in the morning of May 6th. At 8:30 o'clock in the morning of that day, according to the evidence, Schaefer fully realized that Stoltz would not be on hand on that day to do the necessary underpinning, but, notwithstanding such fact, no effort was made on his own behalf to secure another contractor or to support his own building so as to fulfil his absolute individual obligation which he

assumed in law after receiving notice of Hoffman's intentions.

It is argued by plaintiffs' counsel that the defendant Brezinski agreed with Stoltz that he would notify him of the time when he intended to continue the excavation. This did not imply that Brezinski was in duty bound to search the entire county in order to ascertain his whereabouts or to continue his search beyond the confines of Milwaukee county; nor was he under obligations to make any search whatsoever, in view of the attempted efforts of Schaefer to serve him with notice. Whatever duty Brezinski assumed with respect to giving notice to Stoltz consisted of a mere moral and gratuitous obligation, emanating in the spirit of kindness in Brezinski to aid a fellow contractor.

But it is insisted by Schaefer that on the 4th, 5th, and 6th days of May Brezinski assured him that the soil was of a hard and substantial nature; that there was no danger of anything happening; and that he (Brezinski) would protect plaintiffs' property. Brezinski was not the agent or contractor for the plaintiffs; he was Hoffman's contractor. His contract obligations consisted of performing the proposed excavations upon Hoffman's lot, and in the performance of his duties he was obliged to exercise ordinary care. This contract was not performed with the aid of steam shovels or other mechanical power which would have a tendency to disturb the soil of the adjoining property owner. It was not necessary to use dynamite for explosive purposes, and the contract did not pertain to the construction of a large, heavy building requiring steam piling; on the contrary, Brezinski's contract, according to the undisputed evidence, was performed in the most primitive manner known to man, viz. by the use of a horse-propelled plow and with the aid of men using shovels. The jury expressly found that in making the excavations Brezinski did not trespass or intrude upon plaintiffs' soil. Here then we have a plain, simple manual duty

performed by Brezinski under his contract, in a manner conclusively signifying the exercise of ordinary care, unaccompanied with a trespass or an interference with plaintiffs' property rights. It was conceded by Schaefer that he did not understand that when Brezinski proceeded with his excavation and promised to protect plaintiffs' property that he would perform Stoltz's obligations, and the assurances that Brezinski gave, as above stated, were merely the expression of an honest opinion as to the nature of the soil, the danger in excavating, and the performance of a duty assumed under the contract entered into with the defendant Hoffman that proper care would be used so as to protect the plaintiffs from property damage.

This case was not submitted to the jury upon the theory that the defendants should be held liable because Brezinski failed to notify Stoltz of his intention to continue excavations; neither was it submitted upon the theory that the defendants were negligent in failing to protect plaintiffs' property by assuming Stoltz's obligations, or obligations of a similar nature; but the parties acquiesced in the submission of the first question in the verdict, which reads as follows:

"Was the defendant Brezinski wanting in the exercise of ordinary care *in the manner in which he made the excavation on the lot of defendant Hoffman?*"

After stating the question the court instructed the jury as follows:

"The burden of proof as to this question is upon the plaintiff; that is, in order to justify you in answering this question 'Yes,' plaintiff must have satisfied you by a fair preponderance of the evidence and to a reasonable certainty that it should be so answered. If you are so satisfied, you should answer this question number 1 'Yes;' if you are not so satisfied, you should answer it 'No.'

"Ordinary care as it relates to this question—by the term 'ordinary care' is meant such care as a person of ordinary intelligence and prudence usually exercises in a like or similar

case under like or similar circumstances. By 'ordinary care' is meant such care as the great mass of mankind usually exercise in a like or similar case, under like or similar circumstances.

"And I will say to you further in this regard, that it is the law in this state that the owner of adjoining property, when he desires to build on his property and excavate, owes a duty to the adjoining lotowner to use ordinary care in making such excavation, to the extent that he does not disturb or impair the soil of the adjoining lot in its natural state. The owner of adjoining property such as Mr. Hoffman had in this case, owed no duty to Mr. Schaefer to protect the soil, further than to leave it in such shape as it would not collapse of its own weight independent of any building or structure on it. I think I have made that plain. That is the extent of the duty and obligation of the adjoining property owner. So in passing on question 1 you w ll be guided by that fact."

The issue attempted to be raised by question number 1 is fully defined and outlined by the instruction, and in such issue as so presented the parties apparently acquiesced.

There was evidence in the case by which the jury might have found that the defendant Brezinski, in excavating for the basement on the lot of the defendant Hoffman, excavated beyond the lot line and into plaintiffs' soil, but the jury expressly negatived such inquiry, upon a conflict in the evidence. There being no other evidence in the case tending to show a negligent excavation on Brezinski's part, the court properly performed a duty in changing the answer of the jury to the first question of the verdict and ordering judgment for the defendants dismissing plaintiffs' complaint.

The subject of lateral support and that of the rights and obligations of adjoining landowners are of great importance, not only to the owners of property but to the public in general. They are especially of great importance to the property owners and to the public in large cities containing con-

gested areas. In the larger cities of Europe few buildings containing in excess of five or six stories have been erected in the past, but the present-day tendency in such European cities is to increase the height of buildings wherever they are not limited by building restrictions. In the United States sky-scrapers of ever-increasing height have become so common as to attract no particular attention, and even in Wisconsin the larger cities are blessed, or cursed, with structures on the principal streets of a height unknown anywhere half a century ago. To promote the stability of high structures ordinarily requires a deep and adequate foundation, and the utilization of the soil beneath the grade of the streets is on an increase in proportion to the extension of structures into the air. The building of huge subterranean structures involves a specialty with which civil engineers of the highest order only are familiar. That these structures erected both upwards into the air and downwards under the grade of the soil, if improperly designed or inadequately protected, may involve the loss of many millions of dollars of property and of innumerable lives, requires no comment by way of illustration; therefore the courts of this country, realizing the importance of the subject, have succeeded in laying down rules and principles of conduct which are quite uniform. In Wisconsin three comparatively recent cases have covered generally the entire field, viz.: *Hickman v. Wellauer,* 169 Wis. 18, 171 N. W. 635; *Christensen v. Mann,* 187 Wis. 567, 204 N. W. 499; and *Wahl v. Kelly,* 194 Wis. 559, 217 N. W. 307. The *Wahl Case* explicitly recognizes the mutual, reciprocal, and nondelegable duties involved in this case.

There is another feature in this case which requires comment. The defendant Brezinski, as an independent contractor, occupied a relationship towards Hoffman under and pursuant to which he was under obligation primarily to protect Hoffman's interests in the performance of his contract.

His field of operations was circumscribed by the contract itself, and if for any reason satisfactory to himself he entered into an arrangement with the plaintiffs which was not within the apparent or actual scope of his contract, such arrangement in no way could bind Hoffman. Hoffman owed no duty, after having given notice, to protect the plaintiffs' structure. There is no credible evidence in the case that he either assumed such a duty or that he had any knowledge of an arrangement by which Brezinski assumed such a duty. Under these circumstances, if Brezinski voluntarily extended his kindness to the plaintiffs by making a promise to protect their structure in an emergency, he did so as the representative of the plaintiffs and not of the defendant Hoffman. There is no credible evidence in the case that Hoffman was ever informed of such an alleged arrangement; but under the evidence, as is heretofore indicated, Brezinski performed his full duty towards all the parties interested in this controversy, and the damage resulting from the cave-in is solely traceable to the neglect of Stoltz and of Schaefer himself, who, when he realized the true situation, did not arrange for the procurement of some other contractor to support his wall.

The judgment of the lower court must therefore be affirmed.

*By the Court.*—Judgment affirmed.