SCHMIDT and another, Plaintiffs and Respondents, v. CHAP-
MAN and others, Defendants and Respondents: HERSH
CONSTRUCTION & ENGINEERING COMPANY, Defendant
and Appellant.

*October 29—December 22, 1964.*

12

14

For the appellant there were briefs by *Gibbs, Roper & Fifield,* attorneys, and *Richard S. Gibbs* of counsel, all of Milwaukee, and oral argument by *Richard S. Gibbs.*

For the respondents Schmidt there was a brief by *Lichtsinn, Dede, Anderson & Ryan* of Milwaukee, and oral argument by *Karl M. Anderson.*

For the respondents Chapman there was a brief by *Hersh & Magidson,* attorneys, and *Harry Lensky* and *Robert L. Hersh* of counsel, all of Milwaukee.

For the respondent Saltzmann there was a brief by *Woodrow J. Bach* of Milwaukee.

WILKIE, J. Four issues are presented on this appeal:

(1) Was the failure of plaintiffs to take such steps as were available to them to protect the building a cause of the building collapse as a matter of law?

(2) Is defendant general contractor liable to plaintiffs for damages resulting from its negligent trespass on the

land of an intervening landowner whose property adjoined the property on which plaintiffs' building was located?

(3) Did the trial court err in receiving the opinion evidence of Mr. Mann regarding removal of the intervening strip as a cause of the collapse?

(4) Did the trial court abuse its discretion in allowing plaintiff to amend its complaint as to the general contractor so as to conform to the evidence?

In essence we are concerned here with the respective rights and obligations of the parties for the collapse of the Schmidt building accompanying excavating on an adjacent intervening strip of land not owned by the excavating landowner.

The general rule is that a property owner has a right to lateral support from an adjoining property owner for his land in its natural condition.[1] The owner of land which has been encumbered by the construction of a building is not entitled to support for this increased burden.[2]

In this respect the rule of lateral support is stated as follows:

". . . 'Between adjacent landowners, the general principle in this regard is that each has an absolute property right to have his land laterally supported by the soil of his neighbor, and if either in excavating on his own premises so disturbs the lateral support of his neighbor's land as to cause it, in its natural state, by the pressure of its own weight, to fall away or slide from its position, the one so excavating is liable. This right of lateral support applies only to the land of the adjacent owner, and does not include

[1] *Christensen v. Mann* (1925), 187 Wis. 567, 575, 204 N. W. 499, 41 A. L. R. 1192; 2 Thompson, Real Property (1961 replacement), pp. 640–642, sec. 415; 1 Am. Jur. (2d), Adjoining Landowners, p. 717, sec. 37.

[2] *Eggert v. Kullmann* (1931), 204 Wis. 60, 234 N. W. 349; *Wahl v. Kelly* (1928), 194 Wis. 559, 217 N. W. 307; *Christensen v. Mann, supra,* at page 576; *Laycock v. Parker* (1899), 103 Wis. 161, 177, 79 N. W. 327; 1 Am. Jur. (2d), Adjoining Landowners, p. 718, sec. 40; 3 Tiffany, Real Property (3d ed.), p. 190, sec. 753.

the right to have the weight of the building placed upon the land also supported. And when, upon an excavation made on his own land by an adjoining landowner, a building upon the adjacent land by its weight and pressure causes the building itself and the land upon which it stands to sink, then in the absence of negligence the one making the excavation is not liable for injury to the building resulting from its subsidence.' " [3]

A neighboring landowner who intends to excavate on his property owes a duty to his adjoining property owner on whose land a building has been constructed to give proper notice to that adjoining property owner of his intention to excavate.[4] Furthermore, the excavating landowner or the excavator he engages to do excavation work is obliged to exercise reasonable care in the performance of such excavating.[5]

The nature of the negligence of the excavator for which he may be held responsible has been spelled out:

"In case of negligence on the part of the excavator, he will be liable for injury to the building caused thereby, although the land would not have fallen had there been no buildings thereon. The degree of care to be exercised, in order that the excavator may be immune from a claim for damages by the owner of adjoining real estate not in its natural condition, must be commensurate with the apparent or actual danger. The care required in each particular case depends largely upon the particular facts and circumstances and the physical conditions existing in each case. This rule does not make the excavator an insurer of the building on adjoining property. It goes no further than to require him to exercise

---

[3] 2 Thompson, Real Property (1961 replacement), p. 643, sec. 415.

[4] *Drott Tractor Co. v. Kehrein* (1957), 275 Wis. 320, 81 N. W. (2d) 500; *Christensen v. Mann, supra,* at page 577; 2 C. J. S., Adjoining Landowners, pp. 13, 14, sec. 13.

[5] *Schaefer v. Hoffman* (1929), 198 Wis. 233, 223 N. W. 847.

a reasonable degree of skill and care to avoid injuring such building." [6]

Does the excavator have any different duty to the owners of the property on which a building is located where in his excavating he trespasses onto an intervening strip (owned by a third party) adjoining the property on which the building is situated? Any harm that results from such excavation to the building on adjacent property is due to the negligence of the excavator and is a violation of his duty to the owner of the building. The Restatement rule describing the responsibility of a trespassing excavator for acts of negligence causing the collapse of a building on adjoining property is as follows:

"From what has been said, it follows that conduct that would be reasonable when engaged in by the owner of the supporting land may be unreasonable when engaged in by a person who has no legally protected interest in the supporting land and is merely trespassing thereon. The owner of the supporting land and a trespasser on it are alike subject to absolute liability (§ 817, Comment b) for withdrawing support that is naturally necessary (§ 817, Comments c to g). For withdrawing support that is not naturally necessary, neither of them is subject to absolute liability, but each of them is subject to liability for negligence. Conduct on the supporting land that would be reasonable on the part of the owner of it may be unreasonable on the part of a trespasser on it. This is because the interest that the trespasser is promoting by his conduct on the supporting land is normally not so highly regarded as the interest of the owner of it. In a given case, unless there are peculiar circumstances that increase the utility of the conduct of the trespassing actor, a comparatively slight risk of harm either from the withdrawal of support, or from the particular manner in

---

[6] 2 Thompson, Real Property (1961 replacement), p. 660, sec. 416.

which it is withdrawn, is' unreasonable, and the conduct is negligent." [7]

The landowner whose property is threatened by the planned excavation owes a duty to protect the buildings that have been constructed on his own land by taking reasonable measures to protect his own land and buildings as against the intended excavation and as against the collapse of his land and improvements due to the excavating on the adjoining property. [8]

## *The Schmidts' Negligence.*

The plaintiffs owed a duty to take such means as were available to them to protect their own land and buildings against a collapse caused by the excavating being done on the adjoining property. The jury found that the plaintiffs had failed to meet this obligation but that their failure was not a "substantial factor in causing the collapse of the wall."

The Schmidts' duty to protect the building was not reduced by the fact that the excavation was done by a trespasser on the adjoining property. The record shows that Schmidt received notice from the Chapmans that the excavation would go to the Schmidt property line and that the

---

[7] Restatement, 4 Torts, p. 204, sec. 819.

[8] In 1 Am. Jur. (2d), Adjoining Landowners, p. 728, sec. 52, it is stated: "It is generally held to be the duty of the owner to shore or prop up his own building so as to render it secure during the progress of the work."

In *Schaefer v. Hoffman, supra,* at page 239, the rule is stated: "Where, however, the soil of an adjoining landowner, at or near the dividing line, is burdened with the weight of a structure erected thereon, such additional weight must be cared for and protected by the owner of the premises upon which the structure is erected, if his adjoining landowner proceeds to excavate and gives timely notice of his intention so to do."

See also *Wahl v. Kelly, supra;* and *Hickman v. Wellauer* (1919), 169 Wis. 18, 22, 171 N. W. 635.

Schmidt foundation would be exposed. Mr. Schmidt inquired of Mr. Perssion about the extent of the excavation and Perssion told Schmidt that the excavation was being performed on his property (parcel C) without his permission and that he had warned the Chapmans about it. Neither Schmidt made any direct inquiry of either the Chapmans or Hersh concerning what had been done or what was planned to be done at a later time.

The failure of the Schmidts to inquire of the Chapmans and Hersh regarding the excavation that was in the process of being made to the Schmidt line and then to take such means as were available to them to protect the building, was, as a matter of law, a substantial factor in causing the collapse of the wall.

### Hersh's Liability.

Hersh's causal negligence with respect to the direction and supervision that it gave relative to the grading and excavating performed in the vicinity of the wall of the Schmidt building could be based on one or more of three separate theories: (1) Striking the building; (2) undermining the foundation and footings; (3) trespassing on the Perssion intervening strip of land followed by the removal of the strip with the result that the collapse of the Schmidt building was caused at least in part by either the withdrawal of lateral support or the crumbling away of the soil beneath the footings.

There is no need for us to consider whether or not the record supports a jury's finding of negligence against Hersh under either of the first two theories, since the record clearly supports a finding of causal negligence under the third theory. Hersh's negligence in this respect is well described by the trial court when it stated in its opinion on motions after verdict:

"The jury did not make a finding on the specific cause of the collapse of the wall, but the evidence clearly supports the conclusion that either the withdrawal of lateral support or the crumbling of the subsoil under the footing causing a general subsidence would not have occurred if the defendant had not invaded the Perssion strip. This is consistent with the evidence and the jury's findings and it is adopted as findings by the court in order to arrive at a completed verdict. Had the defendant Hersh prepared the land for parking purposes without excavating within the Perssion strip, the wall would not have collapsed. In the process of the rough grading soil was removed from the Chapman property, but a six-foot earthen barrier constituting the Perssion strip preserved the integrity of the Schmidt wall. When Hersh removed the barrier and excavated below the footings of the Schmidt building on the property belonging to Perssion, it became liable for the consequent injuries to Schmidt's property."

Hersh claims the trial court committed two errors that prejudiced him on the question of his negligence. We discuss these two alleged errors under the next two issues.

*Opinion Evidence.*

In *Kreyer v. Farmers' Co-operative Lumber Co.*[9] the court stated:

"Trial courts have wide discretion as to admitting opinion evidence of expert witnesses. *Anderson v. Eggert* (1940), 234 Wis. 348, 291 N. W. 365; *Henthorn v. M. G. C. Corp.* (1957), 1 Wis. (2d) 180, 83 N. W. (2d) 759.

"The principal rule on whether or not expert opinion evidence should be received is stated in the *Anderson Case, supra,* where the court held, at page 361:

" 'Whether the testimony was properly received in this case depends upon whether members of the jury having that knowledge and general experience common to every mem-

---

[9] (1962), 18 Wis. (2d) 67, 75, 117 N. W. (2d) 646.

ber of the community would be aided in a consideration of the issues by the testimony offered and received.' "

It is apparent that based on Mr. Mann's background as a building inspector of the city of Milwaukee since 1951, as a supervisor in that office for three years, as a university graduate with course work in the composition of soils, as an investigator of from eight to 10 prior building collapses, he had more knowledge than a layman and that the trial court did not abuse its discretion in permitting him to testify.

Hersh's principal objection is that Mann was permitted to give an opinion (that the collapse of the wall was caused by the sandy soil sliding out from under the footings and foundation) based on an opinion (that "in his opinion" sand from underneath the footings had slid out).[10] But the record shows that Mr. Mann actually saw the sand coming out from beneath the footing and thus he was not expressing an opinion based on an opinion but on an actual observation.

### Amending of Complaint.

The complaint had alleged as ultimate facts:

". . . in the course of said excavation work said defendants trespassed upon parcel A without any authority or permission whatever, removing substantial quantities of earth and striking the south wall of the plaintiffs' building upon parcel A with repeated and constant blows by the vehicle used in said excavation; said south wall collapsed. . . . by reason of the negligence of the defendants in that . . . (b) [t]he defendant, Hersh, failed properly to instruct and supervise the work of its subcontractors as hereinbefore set forth, allowing said subcontractors to excavate and trespass . . . ."

[10] *McGaw v. Wassmann* (1953), 263 Wis. 486, 57 N. W. (2d) 920, 58 N. W. (2d) 663.

After the trial the trial court permitted the plaintiffs to amend their complaint against Hersh to allege Hersh's negligence in the evidentiary fact of failure to examine the surveys, the deed, and the blueprints.

Dr. Chapman testified that he gave Hersh two surveys of the land; the Hersh supervisor, Mr. Serdahely, stated he obtained the measurements from the blueprints and assumed the lot went to a telephone pole which was apparently situated on the south boundary of the Schmidt property. He testified he did not actually measure the Chapman lot. These facts permit an inference that Hersh was negligent in ascertaining the precise limits of the Chapman property and hence in its supervision of the excavation. If the documents incorrectly described the property boundaries, Hersh could have produced them. The record does not disclose any abuse of discretion on the part of the trial court in permitting this amendment.

Since on this record both Schmidt and Hersh were causally negligent in relation to the collapse of the Schmidt building the jury should have compared their respective negligence. Since such a comparison was not made the judgment should be reversed and the cause remanded for a new trial on the respective liability, if any, of Schmidt and Hersh, and on the comparison of their negligence if both are found liable. In conducting the new trial, none of the facts stated herein are to be construed as the law of the case or as limiting the scope of the evidence which may properly be admissible during such new trial.

*By the Court.*—Judgment dismissing complaint against Gebhardt, Chapman, Perssion, and Saltzmann affirmed; judgment against Hersh reversed and cause remanded for proceedings not inconsistent with this opinion; costs on this appeal to appellant.

CURRIE, C. J. (*concurring*). I fully concur in the opinion written by Mr. Justice WILKIE. The argument advanced in the dissenting opinion goes to the issue of whether plaintiffs were justified in failing to underpin their building after receipt of the notice that the excavating would be carried to plaintiffs' building and would be deeper than its footings. Thus this argument has to do with the issue of negligence, not of causation.

Upon the new trial I would suggest that the question which inquires with respect to plaintiffs' failure to protect their property be phrased in terms of negligence so that it would read substantially as follows:

"Did the plaintiffs Schmidt negligently fail to take such means as were available to them to protect their property?"

It is clear that the trial court intended this question to be framed in terms of negligence because of inclusion in the verdict of the comparative-negligence question.

BEILFUSS, J. (*dissenting*). I respectfully dissent from the portion of the majority opinion which holds as a matter of law that failure of the plaintiff Schmidts to take such means as were available to them to protect their property was a "substantial factor" and, therefore, a cause of the collapse of the building.

The jury found that the Schmidts failed to take such means as were available to them to protect their property but found that such neglect was not a cause of the collapse.

Clearly our function on review is to search the record for credible evidence or reasonable inferences therefrom that will sustain the verdict. If the jury had found that plaintiffs' failure was a cause I would not complain. However, from my review of the facts in the record before us, I conclude there is a credible basis for the jury's finding of no cause.

It appears without dispute that Caroline Perssion and not Dr. Chapman owned the intervening six-foot strip, so that in reality the Schmidts and Dr. Chapman were not adjoining owners, and that Chapman was a trespasser on the land of Perssion. It further appears that after the preliminary excavation in August, and the written notice in September, the Schmidts contacted Mr. Perssion and that he confirmed his wife owned the six-foot strip and that no permission had been given to Chapman or anyone to excavate the intervening strip.

The jury could find from disputed testimony that Perssion immediately thereafter notified Chapman of the ownership of the property and that Chapman had no right to excavate it. Perssion then told the Schmidts of the substance of his conversation with Chapman.

After the preliminary excavation, a four by four by six-foot portion was left adjacent to the Schmidt building. Although the foundation of the building was partially exposed, it remained erect and undamaged by virtue of the lateral support furnished by this triangular remaining portion of the intervening strip. This condition remained without change until the final excavation of this remaining portion of the intervening strip in December. After Perssion talked to Chapman in September no additional notice, written, oral, or constructive, was given by or on behalf of Chapman to the Schmidts of additional excavation.

Viewing the evidence in the light most favorable to the verdict, as we are required to do, the jury could find from the credible evidence and reasonable inferences that the Schmidts as reasonable persons could conclude the intervening strip (after the preliminary excavation) was sufficient to support the building, that Perssion owned the strip and had not consented to its removal, and that Chapman had been so informed. From these factual conclusions the jury could

and did find that the Schmidts failed in their duty in not advising Chapman that Perssion owned the strip but that such failure was not causal because Chapman already knew of these facts by virtue of his conversation with Perssion.

I conclude that there is sufficient credible evidence in the record to sustain the verdict. It is significant that the verdict had the approval of the trial court. I would affirm.

I am authorized to state that Mr. Justice FAIRCHILD and Mr. Justice HALLOWS join in this dissent.