Louis W. GORMAN et al., Appellants,

v.

TPA CORPORATION, Gerald Deters d/b/a Deters Bros. Construction Company, Appellees.

Court of Appeals of Kentucky.

Sept. 22, 1967.

Rehearing Denied Nov. 17, 1967.

Louis W. Gorman, Gus Sheehan, Jr., Covington, for appellant.

Charles Deters, Covington, for appellee.

R. C. TARTAR, Special Commissioner.

This appeal involves the law governing the respective rights and duties of persons using a common or party wall to support their buildings, on severance by one of them of his building from the wall. The litigation giving rise to the problems now before us erupted when the appellee TPA Corporation, one of the defendants below, razed its building then contiguous and connected to the wall, preparatory to the erection of a new structure some three feet therefrom. Deters, the other appellee and defendant below, was employed by TPA to demolish its building. Thereafter, the appellants Gorman brought this action alleging that, without any notice to them, Deters trespassed upon their property and was so negligent in the performance of the demolition as to damage the wall and leave it in an unsightly condition, and that through the joint negligence of the defendants in erecting the new structure the lateral support adjoining the plaintiff's building was so changed as to cause water to seep into their cellar, all to their damage in the sum of $3,000.

The defendants denied these allegations, a trial was had, and at the conclusion of the evidence the court directed a verdict for the defendants. The plaintiffs have appealed from the judgment entered on that verdict, dismissing their complaint.

Hereinafter the plaintiffs will be referred to as the Gormans, and the defendants as TPA and/or Deters.

The Gorman property fronts on Eighth Street, and TPA's property fronts on Scott Street, in Covington. The deed to the Gormans, who have owned their property since 1945, calls for lines running "eastwardly through the North side of 8th Street 18½ feet more or less to a dividing wall of a double brick house situated on the within described property and the property next east thereof and from the front extending back northwardly between parallel lines to Scott Street 33 feet."

The deed to TPA calls for lines "parallel with Eighth Street 61¹¹⁄₁₂ths feet, more or less to the west wall of the double brick house facing Eighth Street" and "thence Southwardly and parallel with Scott Street 33 feet to the north side of Eighth Street." And it is sufficiently clear that this "dividing wall" (whether double or not is not shown) was and had been, at

least since the Gormans purchased their building and until the demolition of the TPA building, structurally a part of both buildings, the former being three stories high and the latter only two. The two buildings received common support from this wall.

This is all we have in the record, with sufficient degree of historicity, as to the title to these properties, their devolution, or the circumstances in which this wall first came into being or became a common wall. While we do not doubt what is said about all this in the brief of appellees, it is not evidence and cannot form the basis of our decision in any respect.

■ Still, on the facts and history of record which we have stated, and despite the contention of the Gormans to the contrary, we have no hesitation in holding that in law this was a party or common wall, and that this was so whether it stood equally or partly on the land of both of these parties or wholly on the land of only one of them. The principles and presumptions clearly enunciated in the decisions of this and other courts make this conclusion unavoidable. See Henry v. Koch, 80 Ky. 391, 4 Ky.Law Rep. 282; Smith v. Martin, 4 Ky.Law Rep. 442, 11 Ky.Opin. 818; Bright v. Bacon & Sons, 131 Ky. 848, 116 S.W. 268; Farmers Nat. Bank of Danville v. Moore, 282 Ky. 502, 139 S.W.2d 420, citing Hendrick v. Haley, 4 Ky.Law Rep. 356; 40 Am.Jur., Party Walls, §§ 2, 5 and 6, pp. 485–488; 69 C.J.S. Party Walls § 3, p. 4. Even if in fact (which we do not find it necessary to decide) this wall is wholly on the land of the Gormans, it was still a party wall under the authorities cited; nor could such fact be considered as detracting from TPA's right to detach its building or as increasing its obligation or liability to the Gormans in so doing.

■ It is the law in this state that either of the adjoining owners "may remove his own building without liability for resulting damages to the other, provided he gives proper notice of the removal and uses reasonable care and caution to protect the wall and remaining building." 40 Am.Jur., Party Walls, § 27, p. 501, the quotation being duly supported by our own case of Clemens v. Speed, 93 Ky. 284, 19 S.W. 660, 19 L.R.A. 240; see also Annotation, 9 A.L.R. 1329.

While it is conceded that TPA gave the Gormans no express or formal notice of the demolition, the testimony of the Gormans themselves is an admission that they knew about it from start to finish. Gorman testified that he was planning to remodel their building at the same time and that he was stopping by there once or twice a week. He saw the TPA Building "about three-quarters way down," and he knew that "they were in process of demolishing it." He said nothing to Deters who was there on the job.

■ The function of notice was to enable Gorman to look to his own protection. Clemens v. Speed, supra. In the admitted circumstances described, there can be no doubt that Gorman's own actual knowledge served every purpose of the requirement that TPA give him notice and thus superseded that requirement. See Cable Piano Co. v. Lewis, Jr., 195 Ky. 666, 672, 243 S.W. 924; 39 Am.Jur., Notice and Notices, §§ 5 and 12, pp. 235–236, 238. We add only that there is no showing on this record that the Gormans suffered any damage by want of express notice from TPA.

There remain only the issues of the care used by TPA and Deters, and of the damages, if any, suffered by the Gormans by reason of any failure on the part of TPA and Deters to use reasonable care in the demolition and subsequent construction. Looking first at the removal of the two walls and the roof of the TPA Building from the common wall, there is really no evidence of failure to use due care unless it is to be implied from the condition in which the common wall and the Gormans' building was left.

Gorman's testimony is that the whole side (or part between the side walls of the TPA Building) of "my wall" had been defaced and left in an unsightly condition, that plaster on the interior of the rear wall of the TPA Building (the exterior of the common wall) had been left exposed and unremoved, that they had dug into his building about 6 inches, and that they had left bricks from the walls of their building "hanging on" his building or "protruding" from it.

Al Dorning, a local contractor, also testified for the Gormans on these issues. He had examined the premises and the wall after the removal of the TPA Building. The wall was "a mess," "raggedy looking," "all chewed up." There were "a lot of depressions" in the wall where bricks had been removed and there were "a lot of bricks sticking out" or "jutting out," where the walls of the old TPA Building had joined the common wall. There were 15 or 20 "spots" of these kinds, where bricks would have to be shorn off or replaced. The plaster left on the exterior of the common wall would have to be taken off; then a new cement finish would be placed over it and painted. Dorning estimated that all of this, plus water-proofing the basement to take care of seepage, would cost $3,000. He was asked on cross-examination whether the "depressions" would weaken the wall or whether the work he recommended was "because of the looks," and he replied, "That's right. Looks." And then on redirect, asked whether the "depressions" would tend to cause a weakness in the wall if the recommended work was not done, Dorning replied, "It wouldn't do it any good. The building certainly isn't going to cave in on account of it. That's my story."

■ This is the whole case made on this score. It is apparent that the Gormans have produced no evidence of substance that either the common wall or their building was structurally damaged by the removal of the TPA Building. It is apparent that very nearly the whole weight of their

evidence goes to the "looks" of the wall, and to the unsightly condition in which it was left, and that the damages sought represent the claimed reasonable cost of giving the exterior of the wall an appearance which it has never had during their ownership of their building. The law, however, provides no compensation on this account, none merely because the wall has been left unprotected, exposed, or in an unsightly condition. 40 Am.Jur., Party Walls, § 27, p. 501; Annotation, 9 A.L.R. 1329. Moreover, the damages claimed are simply blanketed under a total figure of $3,000. There is no particularization or segregation of damages, item by item. Even if there were any showing of negligence on the part of TPA or Deters or both, and even if there were any showing of a compensable item of damage, neither court nor jury would be able on this record to fix its amount.

This applies as well to the final claim, namely that TPA and Deters in erecting the new building negligently altered the lateral support next to the Gormans' building, thereby causing water to seep into and damage their cellar. Gorman testified that after TPA removed its building, it dug footings some 6 feet deep for the foundation of its new building 3 feet from the old common wall. In the meantime, it rained. He happened to go into the basement of his building and found "a half-inch" or "approximately three inches" of water there. He examined the TPA premises and found that the excavation (footing) had about three feet of water in it and that water was coming from it into his cellar, "coming off the walls." And Dorning testified that he had been there once, that there was some seepage in the Gormans' basement, water running or seeping through the ground and through the foundation, which in his opinion (an objection was sustained) was caused by the construction of the new TPA building.

■ Again, there is a total failure to show the extent of this claimed item of damage or to ascribe any amount in dollars to it. There is nothing upon which any

assessment might be made in this account. Besides, neither TPA nor Deters was under any duty in tearing down the old building or in erecting the new one to protect the Gormans' building from the elements. The doctrine of lateral support does not reach this case, nor is any negligence shown on the part of TPA or Deters proximately causing the alleged water seepage. See Clemens v. Speed, supra; City of Covington v. Geyler, 93 Ky. 275, 19 S.W. 741; 40 Am.Jur., Party Walls, § 27, pp. 501–502; Annotation, 9 A.L.R. 1329. The case of Henry v. Koch, 80 Ky. 391, cited by the Gormans, bears no similarity to this case in fact or in law. Here, as in Clemens v. Speed, supra, the claimed damages are "damnum absque injuria, and no action will lie."

Considering all the evidence favorable to the Gormans to be true and considering all inferences favorable to them that may be drawn from the evidence, they failed to make out the elements of a case. The burden was on them in all respects. The court properly granted the motion of TPA and Deters for a directed verdict.

The judgment is affirmed.

All concur.