CITY OF LA CROSSE, a Wisconsin municipal corporation,
Plaintiff,

v.

JIRACEK COMPANIES, INC. (f/k/a Michael A. Jiracek
Home Development, Inc.), a Wisconsin corporation,
Defendant-Respondent,

Norris C. ALBRECHTSON, Mavis E. Albrechtson, William
C. Curti, Joan Curti, First Federal Savings & Loan
Association of La Crosse, Simpson Dry Wall, Inc., a
Wisconsin corporation, Defendants,

Marc ARNESON, Business Management & Exchange Corp.
(f/k/a Bridal Coulee Corp.), a Wisconsin corpora-
tion, Defendants-Appellants,†

COMMERCIAL UNION INSURANCE COMPANY,
Intervening Defendant,

LA CROSSE TRUST COMPANY, a Wisconsin corporation,
Third-Party Defendant.
[Case No. 81–1568.]

CITY OF LA CROSSE, Plaintiff,

v.

JIRACEK COMPANIES, INC. (f/k/a Michael A. Jiracek
Home Development, Inc.), Defendant and Cross-
Claimant Respondent,

Norris C. ALBRECHTSON, Mavis E. Albrechtson, William
C. Curti, Joan Curti, First Federal Savings & Loan
Association of La Crosse, Simpson Dry Wall, Inc.,
Defendants,

---

† Petition to review denied.

Marc ARNESON, Business Management & Exchange Corp. (f/k/a Bridal Coulee Corp.), Defendants and Cross-Defendants-Appellants,

COMMERCIAL UNION INSURANCE COMPANY, Intervening Defendant,

LA CROSSE TRUST COMPANY, Third-Party Defendant.
[Case No. 81–2345.]

CITY OF LA CROSSE, Plaintiff-Respondent,

v.

JIRACEK COMPANIES, INC., Defendant and Cross-Claim Plaintiff-Respondent,

COMMERCIAL UNION ASSURANCE COMPANIES, Intervening Defendant and Cross-Claim Defendant-Respondent,

CLARK ENGINEERING Co., Pacific Employers Insurance Company, Imperial Casualty & Indemnity Company, and State Farm Mutual Insurance Company, Cross-Claim Defendants-Respondents,

UNITED STATES FIDELITY & GUARANTY COMPANY, Mechanical Design, Inc., and Schneider Heating & Air Conditioning, Inc., Cross-Claim Defendants-Appellants,

BUSINESS MANAGEMENT & EXCHANGE CORPORATION, et al., Defendants-Respondents.†
[Case No. 82–355.]

Court of Appeals

*Nos. 81–1568, 81–2345, 82–355. Submitted on briefs July 24, 1982.*
*—Decided August 24, 1982.*
(Also reported in 329 N.W.2d 441.)

† Petition to review denied.

For the defendants-appellants the cause was submitted on the brief of *Robert P. Smyth* and *Smyth, Sauer, Becker, Lynch & Smyth, Ltd.*, of La Crosse.

For the cross-claim defendants-appellants the cause was submitted on the briefs of *Daniel T. Flaherty* and *Johns, Flaherty & Gillette, S.C.* of La Crosse, *William P. Skemp* and *Hale, Skemp, Hanson & Skemp* of La Crosse, and *L.E. Sheehan* and *Moen, Sheehan, Meyer & Henke, Ltd.* of La Crosse.

For the respondent, Jiracek Companies, Inc., the cause was submitted on the brief of *Stephen T. Jacobs* and *Dennis P. Reis* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.*, of Milwaukee.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J. The issues in these three appeals involve the propriety of a summary judgment rendered before the pleadings are complete, the rights of owners of adjoining buildings sharing a party wall, and the effect of a request for substitution of judge filed by parties joined four months after the action was commenced. We conclude that the trial court erred in denying the request for substitution. We vacate the orders entered after that request was filed and affirm the other orders.

The appeals arise out of the razing of a La Crosse building owned by Jiracek Companies. The city commenced this action June 4, 1981 alleging that the Jiracek building was in imminent danger of collapse and menaced public safety. Arneson was joined as a defendant because his building shares a party wall with the Jiracek building.[1] The city sought an order to raze the Jiracek building and to direct Jiracek or Arneson to make safe or secure the party wall.

Jiracek cross claimed against Arneson for an order requiring Arneson to support the party wall and move for summary judgment on its cross claim. The parties briefed the issues and provided affidavits to support their positions on the motion for summary judgment. The trial court heard and granted the motion June 19, even though Arneson had not answered the cross claim and the time to answer had not expired.

Arneson claimed difficulties in providing support for the party wall by the raze deadline. July 25 the trial court ordered Jiracek to proceed with demolition and to provide support for the wall at Arneson's expense. Jiracek then razed the building. Arneson has appealed from the June 19 and July 25 orders. We hold both orders were proper.

The trial court allowed Jiracek's insurer, Commercial Union Insurance Company, to intervene as a defendant. Jiracek cross claimed against Commercial Union for damages arising out of Commercial Union's denial of coverage on Jiracek's loss caused by razing the building.

October 2 the trial court granted Jiracek's motion to join United States Fidelity and Guaranty Company (USF&G), Mechanical Design, Schneider Heating and Air Conditioning and Clark Engineering Co. as addition-

---

[1] Arneson and Business Management and Exchange Corporation own the Arneson building. We refer to these parties simply as Arneson.

al cross-claim defendants on Jiracek's claim against Commercial Union. Jiracek alleged that Mechanical Design, Schneider and Clark negligently designed and negligently made installations which caused the roof, a wall and the foundation of the Jiracek building to collapse and resulted in the raze order. Jiracek claimed that USF&G wrongfully denied coverage on the roof collapse.

USF&G filed a request for substitution of judge on October 5. Mechanical Design and Schneider later did the same. The trial judge denied the requests.[2] USF&G, Mechanical Design and Schneider appeal from that order. We hold the trial judge erred.

Four days after USF&G filed its substitution request, the trial court heard Jiracek's motion to enforce the July 25 order holding Arneson liable for Jiracek's expenses in supporting the party wall. The court found Jiracek's bill of $40,527.07 was reasonable and ordered Arneson to pay it plus a $500 penalty for every day the bill was unpaid after November 1, 1981. Arneson appeals from the October 9 order. We hold that the order must be set aside.

1. *Premature Summary Judgment*

Arneson contends that the motion for summary judgment should not have been heard before Arneson's answer to Jiracek's cross claim was filed, relying on *Schmitt v. Osborne,* 80 Wis. 2d 19, 257 N.W.2d 844 (1977). The *Schmitt* court held that a trial court properly dismissed a motion for summary judgment made before the answer was filed. *Schmitt* reached that re-

---

[2] The trial judge denied the various requests for substitution by orders dated October 7, October 13, October 16 and October 19, and ordered a hearing on the substitution requests which took place October 23. The trial judge then issued a final order denying all substitution requests on February 17, 1982.

sult because of the standard method in applying the summary judgment statute, sec. 802.08, Stats. That method begins with an examination of the pleadings. If a claim is stated and factual issues exist, the court then turns to the affidavits or other proof offered by the party moving for summary judgment. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). Hearing a motion for summary judgment before the pleadings are complete is not authorized by the statute.

We hold that the trial court erred by prematurely granting summary judgment. That, however, does not necessarily require reversal. We must affirm a judgment in spite of procedural error unless the error "has affected the substantial rights of the party seeking to reverse or set aside the judgment . . . ." Sec. 805.18(2), Stats.

The prohibition against reversal for procedural error not affecting "substantial rights" has existed since sec. 84, ch. 120, Laws of 1856. When applying sec. 3072m, Stats. 1911, which similarly restricted appellate review, *Koepp v. National Enameling and Stamping Co.,* 151 Wis. 302, 307, 139 N.W. 179, 181 (1912), held that "the final termination of litigation must not be delayed by errors of trial courts, however numerous and inexcusable, unless it shall appear with reasonable certainty, that, had they not occurred, the result might, probably, have been more favorable to the one complaining of them." The *Koepp* court applied an appellate presumption "in case of error, against its being prejudicial,— that is, its affecting any substantial right of the party complaining." *Id.*

Arneson has not claimed prejudice resulting from the premature consideration of Jiracek's motion for summary judgment. Accordingly, we will **not** reverse the

summary judgment on the procedural ground that it was prematurely entered. We turn to the merits.

### 2. *Duty To Support Party Wall*

Arneson contends that the trial court erred in imposing the duty on him to support the party wall. We hold that the trial court correctly fixed the responsibility on Arneson.

The appellate courts of this state have not determined which owner of adjoining buildings must support a party wall when one building is razed. Several jurisdictions hold that the owner of the razed building has no duty to support the party wall and need only give proper notice of removal to the other owner and use reasonable care in removal not to damage or add to the instability of the party wall. *Lambert v. City of Emporia,* 616 P.2d 1080, 1083 (Kan. App. 1980) ; *Gorman v. TPA Corporation,* 419 S.W.2d 722, 724 (Ky. App. 1967) ; *In re State Fire Marshal,* 120 N.W.2d 549, 557 (Nebr. 1963) ; *Zaras v. City of Findlay,* 176 N.E.2d 451, 462 (Ohio App. 1960) ; *Cameron v. Perkins,* 454 P.2d 834, 839–40 (Wash. 1969).[3]

We approve the party wall rule, as stated, because it is consistent with the rule regarding the duties of adjoining landowners, one of whom proposes an excavation.

A neighboring landowner who intends to excavate on his property owes a duty to his adjoining property owner on whose land a building has been constructed to give proper notice to that adjoining property owner of his intention to excavate [and] . . . to exercise reasonable care in the performance of such excavating.

---

[3] *Contra, Gimbel Bros., Inc. v. Markette Corporation,* 200 F. Supp. 95, 98 (E.D. Pa. 1961), *affd,* 307 F.2d 91 (3rd Cir. 1962) (under Pennsylvania law, adjoining owners have cross-easements of support in a party wall and neither can alter his building to cause the wall to fall through lack of support on his side).

*Schmidt v. Chapman,* 26 Wis. 2d 11, 20, 131 N.W.2d 689, 694 (1964) (footnotes omitted). The adjoining owner must take "reasonable measures to protect his own land and buildings as against the intended excavation and as against the collapse of his land and improvements due to the excavating on the adjoining property." 26 Wis. 2d at 22, 131 N.W.2d at 695 (footnote omitted).

Arneson raises no issue as to notice or reasonable care in removing the Jiracek building. He argues that he enjoys an exception to the rules just stated, relying on *Christensen v. Mann,* 187 Wis. 567, 204 N.W. 499 (1925).

According to the *Christensen* court, a duty to provide support is imposed on an owner who (1) sold land containing a building and retained land extending to the building; (2) constructed buildings with a partition wall between them and sold one; or (3) had land condemned for a railroad right-of-way and the condemnation damages included lateral support for the right-of-way. 187 Wis. at 593, 204 N.W. at 508.

Arneson concedes, however, that before 1885 the Jiracek and Arneson properties were parts of a single parcel owned by one person. One part contained Jiracek's building. The other part was vacant. That year the owner conveyed the vacant part "to the centerline of the [east] wall," "reserving the right of stairway . . . upon the easterly side of the brick wall . . . between the building above named and the building which said parties of the second part proposed to erect upon the easterly side of the building . . . ." Arneson's building was constructed in 1886.

The *Christensen* exceptions are inapplicable. The original owner sold vacant land rather than a building. A party wall does not itself create an implied easement of support. The "right of stairway" is with the owner of the Jiracek building. No railroad condemnation occurred.

### 3. *Timely Request For Substitution*

We disagree with the trial court's opinion that the requests by USF&G and other added defendants for substitution were untimely.

Section 801.58, Stats. 1979–80, provides in relevant part:

(1) Any party to a civil action or proceeding may file a written request, signed personally or by his or her attorney, with the clerk of courts for a substitution of a new judge for the judge assigned to the case. *The written request shall be filed preceding the hearing of any preliminary contested matters and, if by the plaintiff, not later than 60 days after the summons and complaint are filed or, if by any other party, not later than 60 days after service of a summons and complaint upon that party. . . .*

(2) After the written request has been filed, the named judge shall have no further jurisdiction in the action or proceeding except that the judge shall determine if the request is correct as to form and timely filed. If the request is correct as to form and timely filed, the named judge shall be disqualified and shall promptly request assignment of another judge under s. 751.03. The newly assigned judge shall proceed under s. 802.10. (Emphasis added.)

Section 801.58(1), Stats. 1979–80, can be understood to mean that "any party," no matter when added to the action, has the same right as an original party to request substitution within sixty days after being joined. It can also be read as meaning that once the judge has heard a contested matter, no party added after that date can request substitution.

Because sec. 801.58(1), Stats. 1979–80, can reasonably be understood in two or more senses, it is ambiguous, *Kearney & Trecker Corp. v. Dept. of Revenue*, 91 Wis. 2d 746, 753–54, 284 N.W.2d 61, 65 (1979), and we may turn to its history for guidance. *Wirth v. Ehly*, 93 Wis.

2d 433, 441–42, 287 N.W.2d 140, 144 (1980). That history includes the Judicial Council Committee's Note which the supreme court ordered published when amending sec. 801.58(1) to its present form in 1978. *Wisconsin Rules of Civil Procedure,* 82 Wis. 2d ix, x (1978). That note strongly suggests that a new party to the action may request substitution if the party has not presented its views to the court on a contested matter. The committee said:

[Section 801.58(1)] is amended to give a plaintiff 60 days from the time the summons and complaint are filed or a defendant *or any added party* 60 days after service of a summons and complaint upon them to request a substitution of a new judge, provided no preliminary contested matters have been argued *by the requester.* The previous time periods for requesting a substitution of judge (i.e., 10 days after the date of notice for a scheduling conference or 10 days after service of a standard scheduling order) are repealed as the use of such a conference or order is no longer mandatory under s. 802.10. (Emphasis added.)

Previous interpretations of the substitution rule have emphasized the effect of participation in the litigation. In deciding *In Matter of Civil Contempt of Kroll,* 101 Wis. 2d 296, 302, 304 N.W.2d 175, 178 (Ct. App. 1981), we described sec. 801.58, Stats. 1979–80, as a codification of *Pure Milk Products Coop. v. NFO,* 64 Wis. 2d 241, 250, 219 N.W.2d 564, 569 (1974). The *Pure Milk* court held that a party may waive the right to substitution by participating in preliminary matters where evidence is received which goes to the merits of the case. The reason for the rule "is that a litigant who does not like the way a judge is handling a matter should not be able to substitute a second judge simply because the litigant believes things are going badly before the first judge and hopes to obtain a more favorable tribunal."

*State ex rel. Tarney v. McCormack,* 99 Wis. 2d 220, 234, 298 N.W.2d 552, 559 (1980).

The new defendants promptly sought substitution and had not participated in a contested matter. Consequently, allowing them a substitution does not offend the policy against letting litigants test the waters before they ask for a new judge.

We conclude that a substitution motion is timely filed if made within sixty days of service of a summons and complaint on that party, if the added party has not actually participated in preliminary contested matters. A contrary interpretation could terminate the right of added parties to substitution long before they knew they were going to be involved in a lawsuit.

The trial judge noted that orderly judicial process may be disrupted if sec. 801.58, Stats. 1979–80, grants the right of substitution to a party who enters the suit after hearing on preliminary contested matters. The court and the original parties may have expended considerable effort on those matters. If new parties have the right to substitute, a second trial judge may repeat the efforts of the first judge. Because the new parties may contest motions before the second judge and decide to join other parties, a third trial judge may be required to repeat the efforts of the preceding judges.

If the predicted disruption occurs, the remedy is with the legislature and the supreme court. The many past amendments to the civil substitution rule by the legislature and the supreme court reflect the struggle to devise a workable and just procedure. Parallel attempts have occurred under the criminal procedure code.[4] The ma-

---

[4] Section 801.58, Stats., was recreated in its present form by sec. 2, ch. 296, Laws of 1971. It has since undergone five separate substantive amendments by the legislature and the supreme court. *See, Wisconsin Rules of Civil Procedure,* 67 Wis. 2d at

jority in *State v. Holmes,* 106 Wis. 2d 31, 315 N.W.2d 703 (1982), acknowledged that the present substitution rule in criminal cases under sec. 971.20, Stats. 1979–80, "can be abused and can result in litigants and lawyers delaying judicial proceedings and arbitrarily interfering with judicial proceedings." 106 Wis. 2d at 67, 315 N.W. 2d at 720. The majority concluded that the legislature was willing to modify sec. 971.20 "to remove such undesirable features as it can consistent with its goal of securing both the fact of and appearance of fairness in judicial proceedings." 106 Wis. 2d at 74, 315 N.W.2d at 724. When studying future changes to the rule in civil cases, the supreme court and the legislature may consider the trial court's situation and predictions in the case on appeal. Meanwhile, we must apply the rule as we construe it.

We hold that the trial court erred in denying the cross-claim defendants' requests for substitution as untimely.

### 4. *Jurisdiction Of The Trial Court After Request For Substitution Filed*

Arneson contends that once the new cross-claim defendants requested substitution, the trial court had no further jurisdiction in the case. He argues that the October 9 order requiring him to pay $40,527 by November 1 or incur a $500 per diem penalty is therefore invalid. He relies on sec. 801.58(2), Stats. 1979–80, which provides that after the request has been filed, "the named judge shall have no further jurisdiction in the

757–58 (1975); secs. 15–16, ch. 135, Laws of 1977; *Wisconsin Rules of Civil Procedure,* 82 Wis. 2d at x (1978); sec. 371, ch. 449, Laws of 1977; and secs. 1–2, ch. 137, Laws of 1981.

Section 971.20, Stats., was enacted by sec. 63, ch. 255, Laws of 1969. It has since undergone four separate substantive amendments by the legislature. *See,* ch. 149, Laws of 1975; secs. 17–18, ch. 135, Laws of 1977; secs. 486–489, ch. 449, Laws of 1977; and sec. 3, ch. 137, Laws of 1981.

action or proceeding" except to determine if the request is correct and to request the assignment of a new judge.

"Jurisdiction" as used in sec. 801.58(2), Stats. 1979–80, cannot refer to subject matter jurisdiction. Section 801.04(1), Stats., provides, "[n]othing in chs. 801 to 847 affects the subject matter jurisdiction of any court of this state." The issue is, rather, the competency of the court to proceed. *Mueller v. Brunn,* 105 Wis. 2d 171, 176–78, 313 N.W.2d 790, 792–93 (1982); *Jansen Co. v. Milwaukee Area Dist. Board,* 105 Wis. 2d 1, 10, 312 N.W.2d 813, 817 (1981).

In the absence of ambiguity, we must give words their "ordinary and accepted meaning." *Kearney & Trecker,* 91 Wis. 2d at 753, 284 N.W.2d at 64. A literal reading of sec. 801.58(2), Stats. 1979–80, requires the conclusion that the trial judge was not competent to proceed with the case after substitution was requested, except for the limited purposes specified in connection with the request.

Under the predecessor to sec. 801.58, Stats. 1979–80, when a proper substitution request was made, the judge on the case was required to order removal and initiate action for calling in another judge, *Dutcher v. Phoenix Ins. Co.,* 37 Wis. 2d 591, 599, 155 N.W.2d 609, 613 (1968); *Wisconsin Co-Op. Milk Pool v. Saylesville Cheese Mfg. Co.,* 219 Wis. 350, 353, 263 N.W. 197, 198 (1935), except that the judge could determine pending motions made by the party seeking substitution. *Luedtke v. Luedtke,* 29 Wis. 2d 567, 569, 139 N.W.2d 553, 555 (1966). The present statute makes no exceptions, either for motions made by the party seeking substitution or for matters involving only those parties who have not sought substitution.

Accordingly, we vacate the order requiring Arneson to pay $40,527 to Jiracek and the findings as to the reasonableness of that amount. Because we vacate that or-

698

der in its entirety, we need not decide whether the trial court abused its discretion when imposing the $500 per diem penalty for nonpayment.

*By the Court.*—Orders of June 19 and July 25, 1981 affirmed. Orders of October 7, 1981, October 9, 1981 and all subsequent orders vacated.